### In re David Alan SCHUM, Debtor.

### Bankruptcy No. 389–34735–HCA–13.

United States Bankruptcy Court,
N.D. Texas.

March 23, 1990.

Elizabeth A. Bates, Mankoff, Hill, Held & Goldburg, Dallas, Tex., for debtor.

---

James D. Shields, Shields, Blankenship & Ford, P.C., Dallas, Tex., for Bank One, N.A.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

The present dispute concerns the treatment of a lien on a debtor's principal residence under a Chapter 13 plan of reorganization.

The court finds that this matter is a core proceeding under 28 U.S.C. § 157(a), (b)(2)(B), (G) and (L) and concludes that as a matter of law, a Chapter 13 plan may not alter the secured claim of a holder of a claim secured only by the principal residence of the debtor by valuation of the collateral under 11 U.S.C. § 506(a) (1979).

## FACTS

On October 11, 1985, the Debtor David Allen Schum, executed an Adjustable Rate Note in the amount of approximately $207,960.00 payable to MBank Preston, Dallas, Texas (the "Bank")[1] which was secured by a deed of trust on the primary residence of the Debtor.

Interest on the note was to be paid to the Bank in monthly installments beginning on November 11, 1985, and ending on October 15, 2015. The note provided for a two year demand.

On October 11, 1987, the Debtor executed a demand renewal note, which, according to the Debtor, matured by its own terms on April 11, 1989. The Bank alleges that on June 2, 1989, it made demand upon the Debtor for the balance of the note ($207,960.00).

The Debtor filed a petition for relief under Title 11 Chapter 13 of the United States Bankruptcy Code on July 31, 1989. The Bank submitted its proof of claim for the full amount of the note.

The Debtor's appraisal of the fair market value of the property is $177,000. The Bank has appraised the value of the property at $187,000.

The proposed Chapter 13 plan provides for a bifurcated treatment of the amount due to the Bank. With respect to the secured portion of the debt, the Debtor is to pay $1282.87 per month for fifty-nine (59) months. On the 60th month of the plan, the Debtor is to make a balloon payment to the Bank in the amount of $177,000.00. The payments made to the Bank under the plan are based upon its secured status only to the extent of the alleged value of the property. The plan disposes of the remaining $30,000 deficiency as a general unsecured debt.

The Bank has challenged this treatment under the plan as a modification of its rights which is precluded by 11 U.S.C. § 1322(b)(2) (1989 Supp.). The Debtor argues that pursuant to 11 U.S.C. § 506(a) the Bank is entitled to secured treatment only to the extent of the value of its collateral.

## CONCLUSIONS OF LAW

Reorganization under Chapter 13 is subject to statutory provisions applicable only to that Chapter (Sections 1301, *et seq.*), as well as general provisions discussed below. Because this issue involves the construction of statutory provisions, the key to this conundrum is the language of the statute itself. *Escondido Mutual Water Co. v. LaJolla Board of Mission Indians*, 466 U.S. 765, 104 S.Ct. 2105, 80 L.Ed.2d 753 (1984).

Under Chapter 13 reorganization, a debtor's plan may:

(2) modify the rights of holders of secured claims *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of any class of claims or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b)(2) (Emphasis added). The specific provisions found in Chapter 13 must be accepted as controlling over the

---

1. The term "Bank" shall refer to MBank Preston, Dallas, Texas as well as any successors in interest to the claim of MBank Preston, Dallas, Texas.

general provisions of Chapters 1, 3, and 5 which are applicable pursuant to § 103(a). *In re Russell,* 93 B.R. 703, 705 (Bkrtcy.D. N.D.1988), *In re Hynson,* 66 B.R. 246, 249–50 (Bkrtcy.D.N.J.1986). Section 506(a) states that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in such property, or the extent of the amount so subject to setoff is less than the amount of such allowed claim....

The debtor claims that this provision determines the secured status of the Bank under the plan.

The Ninth Circuit has provided some guidance on the statutory interpretation saying:

> [I]f evidence drawn from the face of the statute militates strongly for one interpretation but not quite so strongly that the legislative history may safely be ignored, the legislative history should be considered, but considered cautiously. Under these circumstances a second interpretation should be accepted on the basis of the legislative history only if the evidence is very strong, which will usually require explicit language.

*Tulalip Tribes of Washington v. FERC,* 732 F.2d 1451 (9th Cir.1984), citing *Heppner v. Alyeska Pipeline Service Co.,* 665 F.2d 868, 873 (9th Cir.1981). By failing to define the term "modify", Congress has enacted a rather ambiguous provision in § 1322(b)(2). The ordinary meaning of the term "modify" is: "to change somewhat the form or qualities of; alter somewhat; * * * to reduce in degree; moderate; qualify; ... to change; to become changed." *The American College Dictionary,* (Random House, 1970). The court considers that the term "modify" as used in § 1322(b)(2) might have precluded a debtor even from curing a default or decelerating

a note, but for the statutory history behind § 1322(b)(5),[2] and the Fifth Circuit's previous ruling on this issue. The Fifth Circuit has interpreted § 1322 to allow the debtor to cure a default on a residence and decelerate an accelerated note. *Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984). Accord, *In re Seidel,* 752 F.2d 1382 (9th Cir.1985), *In re Taddeo,* 685 F.2d 24 (2d Cir.1982), *Matter of Roach,* 824 F.2d 1370 (3d Cir.1987), *In re Hynson,* 66 B.R. 246 (Bankr.D.N.J.1986) *In re Simpkins,* 16 B.R. 956 (Bkrtcy.E.D. Tenn.1982), *cf., Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984) (Jolly, J., dissenting).

Judge Tate, writing for the majority in *Grubbs,* determined that congressional testimony distinguished between the debtor's ability to "cure" and "modify." In *Grubbs,* Judge Tate provided a detailed and thoughtful analysis of the legislative intent of 11 U.S.C. § 1322(b)(2), concluding that,

> The Senate amendment's *only purport was to limit the authorization of a plan to "modify" secured debts (reduce installment payments, secured valuation, etc.)*—by the Senate bill's amendment, *no such modification was to be permitted for debts wholly secured by real estate mortgages.* However, the Senate amendment did not purport to affect the authorization for a plan to cure default accelerations, § 1322(b)(3), nor did it purport to affect the curing of defaults on long-term debts not provided for or if dischargeable by the plan.

730 F.2d at 245. (Emphasis added). As a matter of policy, the court further observed that § 1322(b)(2), as finally enacted by Congress, contained a "limited bar" available to the home mortgagor who performed "a valuable social service through their loans, [and] needed special protection against modification of its loans (i.e., reducing installment payments, secured valuations,

---

**2.** "... Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. It is intended that a claim secured by the debtor's principal residence may be treated with (sic) under section 1322(b)(5) of the House amendment." 124 Cong.Rec. House 32383, (Thursday, September 28, 1978).

etc.).'' 730 F.2d at 246.[3]

It is clear that Congress intended special treatment for a creditor whose claim is secured only by a security interest in the debtor's principal residence.[4] The wording of the statute and case law suggests a contrary outcome where a lender is secured by some collateral in addition to the debtor's residence. *In the Matter of Clyde Hoyt, Sherry Hoyt,* 93 B.R. 540 (Bkrtcy.S. D.Iowa, 1988). However, where the property is secured only by the debtor's principal residence, the statute is clear. *In the Matter of Kaczmarczyk,* 107 B.R. 200 (Bkrtcy.D.Neb.1989).

The plain language of the statute provides that the rights of any holders of "secured claims" may be modified "except for a claim secured only by security interest in real property that is the debtor's principal residence[.]" The proposed modification of the debt at issue would have the effect of treating real property secured by only a lien on the debtor's principal residence in the same manner as any other property secured by a lien. Such treatment would frustrate the legislative intent of § 1322(b)(2).

The court rejects the debtor's argument that § 1322(b)(2) does not apply to this case based upon a legislative intent that the limitation on modification apply to long term mortgages. The only indication of this intent is that the debtor may utilize cure provisions under § 1322(b)(5); the court does not observe any legislative distinction between long-term and short-term mortgages.[5]

The court recognizes the inconsistency of the decisions of courts in other jurisdictions. However, the plain language of § 1322(b)(2) and the Fifth Circuit's ruling in *Grubbs v. Houston First American Sav. Ass'n, cited supra.,* control to prohibit a modification of the secured status of a claimant whose claim is secured only by the principal residence of the debtor.

Counsel for claimant is requested to prepare an appropriate order and submit same to the court with copy to opposing counsel.

**3.** The underlying theme behind this provision is the protection of the home mortgage lenders. It seems that it was plausibly argued to the Senate that due to the nature of home-lending, the mortgagors required additional protection under the Bankruptcy Code in order to guarantee the free flow of credit to individuals who desire to purchase a home.

**4.** Congressional discussions regarding farm reorganizations under Chapter 12 shed some light on the legislative intent. With respect to what may be accomplished in a Chapter 12 plan, the Congressional Record indicates that,

> What must be in the plan comes primarily from Chapter 11. What may be in a plan

comes from both Chapter 13 and Chapter 11. In Chapter 13 a debtor may not modify the mortgage on his residence (§ 1322(b)(2))— that provision was omitted and the debtor would be able to rearrange his home mortgage in Chapter 12 just as he can in Chapter 11.

132 Cong.Rec. § 5448 (Wednesday, May 7, 1986).

**5.** The court notes that the practical effect of making the restriction on modification inapplicable to short-term mortgages would penalize lenders which may have taken a greater risk in extending short-term credit to those who could not otherwise qualify for a long-term mortgage.