**In re June Lily WOODALL, Debtor.**

**FIRST INTERSTATE BANK OF OKLA-HOMA, N.A., Successor to First National Bank and Trust Company of Oklahoma City, Trustee for the Pottawatomie County Home Finance Authority, Appellant,**

v.

**June Lily WOODALL, Appellee.**

**Bankruptcy No. BK–89–05469–BH. No. CIV–90–1019–A.**

United States District Court, W.D. Oklahoma.

Oct. 11, 1990.

Keith R. Gibson, Stuart A. Knarr, Oklahoma City, Okl., for First Interstate Bank of Oklahoma.

John B. Monnet, Melinda Monnet, Monnet & Monnet, Oklahoma City, Okl., for debtor.

## ORDER

ALLEY, District Judge.

This is a bankruptcy appeal from a Chapter 13 plan that modified the rights of a creditor (mortgagee/appellant First Interstate Bank of Oklahoma) whose claim was secured only by a mortgage on the debtor's principal residence. The Court has jurisdiction under Rules of Bankruptcy Procedure 8001 and 8013, and 28 U.S.C. § 158. The standard of review as to questions of law is *de novo.* *First Bank of Colorado Springs v. Mullet,* 817 F.2d 677, 678–79 (10th Cir. 1987).

*Background*

Debtor converted her Chapter 7 proceeding to Chapter 13 and submitted a plan on December 13, 1989. The plan sought to bifurcate the mortgagee's claim on her

nation and having her employer and a supplier of key business parts present in the courtroom.

principal residence into secured and unsecured claims under 11 U.S.C. § 506(a). The mortgagee objected, but the objection was denied, and the plan was confirmed.

The mortgagee, First Interstate Bank of Oklahoma, filed a Proof of Claim including a mortgage balance in the principal amount of $45,959.06, with interest through December 1989 in the amount of $3,920.00, miscellaneous expenses in the amount of $1,011.40, and attorney's fees in the amount of $4,595.00. The debtor's plan stated that the fair market value of the real estate was $37,500.00.

*Discussion*

This appeal concerns the interplay between § 506(a) and § 1322(b)(2). Each is set forth below:

§ 506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

§ 1322. Contents of plan

(b) Subject to subsections (a) and (c) of this section, the plan may—

\*      \*      \*      \*      \*      \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

The debtor seeks to bifurcate the mortgagee's claim into secured and unsecured portions, to discharge the unsecured portion, and then to repay the secured portion. The mortgagee argues that § 1322(b)(2) flatly prohibits bifurcation, and that application of § 506(a) would frustrate and nullify the intent of § 1322(b)(2). The Court agrees with the mortgagee and reverses the bankruptcy court for the following reasons.

Courts are not in agreement as to whether § 506(a) should be used to bifurcate claims under § 1322(b)(2), and decisions have been made both ways. In *In re Hougland*, 886 F.2d 1182, 1184 (9th Cir. 1989), the Ninth Circuit found no conflict between the two sections after determining that most real estate lenders "see to it that they [have] a sufficient cushion to avoid finding themselves in an undersecured position." The Ninth Circuit also placed emphasis on § 1322(b)(2)'s sentence structure and the agreement with bifurcation by the bankruptcy treatise 5 *Collier on Bankruptcy* ¶ 1322.06(a) (15th ed. 1979).

*Wilson v. Commonwealth Mortg. Corp.*, 895 F.2d 123 (3rd Cir.1990) examined the legislative history of § 1322(b)(2) and concluded that bifurcation was permissible. Section 1322(b)(2) began in both houses of Congress. The House version was more favorable to debtors and the Senate version was more favorable to lenders. Because the legislative history characterized the final § 1322(b)(2) as a compromise, the Third Circuit concluded, in essence, that Congress had decided to "split the baby" by allowing bifurcation into secured and unsecured claims. 895 F.2d at 128.

*In re Ross*, 107 B.R. 759 (Bankr.W.D. Okla.1989) reversed a previous holding of the court that § 506(a) could not be used to bifurcate § 1322(b)(2) claims. The *Ross* court stated that its prior ruling had been based on *In re Hynson*, 66 B.R. 246 (Bankr.D.N.J.1986), and that *Hynson's* subsequent rejection by *In re Harris*, 94 B.R. 832 (Bankr.D.N.J.1989) required the Oklahoma bankruptcy court to reverse its position as well. The *Ross* court found that the term "secured claim" had meaning as to § 1322(b)(2) only insofar as it was first defined by § 506(a). *In re Hougland*, 886

F.2d 1182 (9th Cir.1982) was also a persuasive case to the *Ross* court, based on the Ninth Circuit's analysis of § 1322(b)(2)'s sentence structure.

Other courts have taken the opposing view that allowing a § 506(a) bifurcation of § 1322(b)(2) claims would render § 1322(b)(2) meaningless. *In re Russell,* 93 B.R. 703 (Bankr.D.N.D.1988) used the rule of statutory construction that specific statutes control over general ones to conclude that § 506(a) should not be permitted to modify a mortgagee's rights. Although the *Russell* court relied on *Hynson,* this Court believes the *Russell* reasoning is sound, regardless of *Hynson's* subsequent history.

*In re Kaczmarczyk,* 107 B.R. 200 (Bankr.D.Neb.1989) reviewed the conflicting opinions on this issue and concluded that § 1322(b)(2) claims should not be bifurcated. The court reached its conclusion based on the history of Chapter 13 before the current revision. The court "concluded that § 1322(b)(2) continued the prohibition on modifying the rights of holders of claims secured by real estate, only with respect to real estate that constitutes the debtor's principal residence.... [A]s Congress did not explicitly change the treatment of claims secured by a mortgage on a debtor's residence, I conclude that a continuity of treatment of such claims was intended." 107 B.R. at 203.

*In re Schum,* 112 B.R. 159 (Bankr.N.D. Tex.1990) relied on *Kaczmarczyk* in likewise concluding that § 1322(b)(2) claims may not be bifurcated. While recognizing the inconsistency of the decisions of courts in other jurisdictions, the *Schum* court found that bifurcation was prohibited by the "plain language of § 1322(b)(2)," and would "frustrate the legislative intent of § 1322(b)(2)." 112 B.R. at 162.

Another court recently examined this issue, and it too concluded that bifurcation would violate § 1322(b)(2). *In re Chavez,* 117 B.R. 733 (Bankr.S.D.Fla.1990) relied on the tenet of statutory construction that "regardless of the inclusiveness of the general language of a statute, it does not apply or prevail over matters specifically dealt with within another part of the same enactment." 117 B.R. at 734. After examining § 1322(b)(2)'s legislative history, the *Chavez* court found that § 1322(b)(2) "was designed to protect residential mortgagees in Chapter 13 cases by prohibiting any modification of the mortgagee's secured lien with the sole exception of curing a default and reinstating the regular installment payments both of which are specifically allowed under § 1322(b)(5)." 117 B.R. at 736. Thus, the combination of statutory construction and legislative history compelled the result that "[t]o the extent § 1322(b)(2) and (5) are inconsistent with and contradictory to these Chapter 5 statutes [§ 506(a)], the § 1322(b)(2) and (5) provisions supersede them. Accordingly, in a Chapter 13 case, the allowed amount of a claim secured only by a security interest in a principal residence of a debtor is, at filing, the balance owing on the debt without regard to the value of the collateral § 506(a) notwithstanding. Application of § 506(a), where the value of the collateral is less than the debt, would modify the rights of the holder of a claim secured only by a security interest in the principal residence of a debtor beyond the permissible impairment provided in § 1322(b)(2) and (5)." 117 B.R. at 736, quoting *In re Catlin,* 81 B.R. 522 (Bankr.D.Minn.1987).

The debtor argues that *In re Dewsnup,* 908 F.2d 588 (10th Cir.1990) does not prevent bifurcation because it did not involve Chapter 13, but instead concerned whether a Chapter 7 debtor could use § 506(a) to void a lien on property that had been abandoned by the estate. The Court agrees with the debtor that *Dewsnup* is not directly on point, but disagrees that *Dewsnup* would allow bifurcation. The Tenth Circuit did not allow Dewsnup to use § 506(a) to void the undersecured portion of the lien on property that had been abandoned, because "allowing lien avoidance under § 506(d) ... gives debtors much more than the 'fresh start' to which they are entitled." 908 F.2d at 593.

Likewise, bifurcation of § 1322(b)(2) claims would result in a windfall to debtors who would then repay only the value of

98

their residence, and reap the benefit of their discharged "unsecured" claim if property values rise. As the mortgagee pointed out in its brief, no such windfall occurs in Chapter 7, because there a mortgagee can foreclose on abandoned property and either hold it till market values rise, or sell it outright. In either event, the Chapter 7 mortgagee does not suffer in the same way as a Chapter 13 mortgagee that had its security interest impaired by bifurcation. This is what the Court believes the Tenth Circuit meant when it referred to "much more than the 'fresh start' to which [debtors] are entitled." Thus, by implication this Court reads *Dewsnup* to prevent debtors from using § 506(a) to bifurcate claims into secured and unsecured claims to achieve a result contrary to the Bankruptcy Code's intended "fresh start."

This Court, like the others that have considered the issue, recognizes the split of authority and different interpretations of the effect of § 506(a) on § 1322(b)(2). After consideration of the different views, this Court agrees with *Chavez* that the decisions prohibiting bifurcation "are more in line with the clear meaning of the statute and intent of the legislature than those cited by debtor's counsel." 117 B.R. at 737. In this Court's opinion, using § 506(a) to bifurcate would make the intent of § 1322(b)(2) a nullity, and the Court believes Congress enacted § 1322(b)(2) for a purpose. Therefore, the Court rejects a construction that would render § 1322(b)(2) meaningless.

After review of the authority and the Tenth Circuit's decision in *Dewsnup*, the Court is persuaded that the better reasoning and the better public policy is that § 506(a) may not be used to bifurcate a claim under § 1322(b)(2). The bankruptcy court erred when it allowed modification of the Chapter 13 mortgagee's rights, and to that extent, the bankruptcy court's decision is reversed.

It is so ordered.