This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052. An appropriate order shall enter.

## ORDER

D. Neal Martin, Shawnee, Okl., for debtors.

Sandy Schovanec, Oklahoma City, Okl., for Bank of Oklahoma.

Givens L. Adams, Asst. Gen. Counsel, Oklahoma City, Okl., for Oklahoma Tax Com'n.

## ORDER

JAMES E. RYAN, Chief Judge.

On September 12, 1990, a hearing was conducted to consider the confirmation of the Debtors' Chapter 13 Plan (Docket Entry No. 6). Objections to the Plan were filed by Bank of Oklahoma, N.A. ("Bank") (Docket Entry No. 7) and the State of Oklahoma, ex rel., Oklahoma Tax Commission ("OTC") (Docket Entry No. 9).

By prior Order entered September 14, 1990, the Objection of Bank of Oklahoma was overruled due to that creditor's failure to appear at the hearing.

Certain legal issues were disputed by the parties and required additional briefing. Bank of Oklahoma submitted a Renewed Objection and Response to Debtors' Brief

**In re Everett D. MORAN, SSN 462–84–5629, Vicki Ann Moran, SSN 556–98–5624, Debtors.**

**Bankruptcy No. 90–70896.**

United States Bankruptcy Court, E.D. Oklahoma.

Nov. 1, 1990.

As Corrected Jan. 7, 1991.

(Docket Entry No. 16) as well as a Supplemental Brief (Docket Entry No. 17). However, these Briefs cannot be considered since the Objection by Bank of Oklahoma has been overruled. This Court will proceed with all legal issues discussed at the hearing since confirmation is dependent upon the ruling on these issues.

Briefs were properly and timely filed by the Debtors (Docket Entry No. 15) and the Oklahoma Tax Commission (Docket Entry No. 14) and thus shall be considered in this Order.

After review of the pleadings referenced herein and the applicable law, this Court does hereby enter the following Findings of Fact and Conclusions of Law in conformity with B.R. 7052 in this core proceeding:

## STATEMENT OF ISSUES

The pleadings give rise to three distinct issues, to-wit:

(a) whether 11 U.S.C. § 506(a) may be used to bifurcate a claim which is secured by an interest in real property which is the Debtors' principal residence into secured and unsecured portions and treat them accordingly under a Chapter 13 Plan;

(b) whether a provision in the Debtors' Chapter 13 Plan which treats the claim as to Debtors' principal residence of Bank with periodic payments over the term of the Plan and a balloon payment at the end of the term represents an impermissible modification of Bank's claim;

(c) whether assessed penalties and interest accruing pre-Petition on a tax claim are entitled to priority treatment under the Debtors' Chapter 13 Plan.

## FINDINGS OF FACT

1. The Debtors commenced this Chapter 13 proceeding by filing a voluntary Petition on August 13, 1990. The Schedules filed in the case on August 27, 1990 include a secured debt to Bank of Oklahoma, N.A. ("Bank") in the amount of $43,467.78. This claim is secured by lien on the Debtors' homestead, more particularly described as:

*Lot Sixteen (16), Block Eight (8), Clarland Terrace Addition, a subdivision of the Southeast Quarter of the Southwest Quarter (SE/4 SW/4), Section 21, Township 9 North, Range 6 East, to the City of Seminole, Seminole County, Oklahoma*

This property serves as the Debtors' principal residence.

2. On September 21, 1990, Bank filed a Proof of Claim ostensibly representing arrearages in the amount of $9,987.13. This claim sets forth various charges including late fees, abstracting costs, insurance premiums, attorneys' fees and other costs associated with the foreclosure of this property. Also, on September 21, 1990, Bank filed a secured claim in the amount of $47,955.82 arising from the foreclosure Judgment obtained in the District Court of Seminole County, State of Oklahoma on June 19, 1990. This Judgment included, according to the Proof of Claim and accompanying documentation, an award for the same costs and expenses set forth in the other Proof of Claim filed by this creditor. As a result, these Proofs of Claim on their face are duplicitous to some extent.

3. On August 27, 1990, the Debtors filed their Chapter 13 Plan. Under this Plan, the Debtors propose to bifurcate the claim of Bank of Oklahoma into a secured claim in the amount of $33,000.00, amortized over 120 months and paid over the 60 month term of the Plan with a balloon payment at the end of the 60 month term for the remainder of the claim. The remainder of Bank's claim is relegated to an unsecured status and treated accordingly under the Plan. Thus, the Debtors assert and Bank does not dispute that the value of the homestead collateral involved is $33,000.00.

4. Debtors assert that the current state of the law and the Bankruptcy Code allows the Debtors to bifurcate the claim of a creditor which is secured by a mortgage on the Debtors' principal residence into secured and unsecured portions which may be treated differently under a Chapter 13 Plan. Further, Debtors argue that a balloon payment at the end of the Plan to

satisfy Bank's secured claim is not prohibited by the Bankruptcy Code.

Bank asserts that such a bifurcation and balloon payment are impermissible modifications of its claim.

5. The Oklahoma Tax Commission filed a Proof of Claim on September 24, 1990, asserting a claim against the Debtors in the amount of $1,214.40. This claim is comprised of the following:

| | |
|---|---|
| Principal amount of tax due: | $ 864.00 |
| Penalty due to the date of Bankruptcy: | $ 43.20 |
| Interest due to the date of Bankruptcy: | $ 307.20 |
| Total amount of Claim: | $1,214.40 |

The Oklahoma Tax Commission asserts that it is entitled to both interest and penalty which has been assessed pre-Petition. The Debtors do not share this view. The Oklahoma Tax Commission also requests this Court require the Debtors to submit a 1988 individual income tax return. A copy of this return was attached to Debtors' Brief and therefore this request is rendered moot.

## CONCLUSIONS OF LAW

A. The dispute in this case regarding the use of 11 U.S.C. § 506 upon a secured claim secured by a mortgage on the Debtors' principal residence has been addressed by several Courts and has resulted in a definite split of authority. See, for example, *In re Hougland,* 886 F.2d 1182 (9th Cir.1989); *In re Ross,* 107 B.R. 759 (Bankr. W.D.Okla.1989); *In re Brouse,* 110 B.R. 539 (Bankr.D.Colo.1990); and *In re Simmons,* 78 B.R. 300 (Bankr.D.Kan.1987), allowing bifurcation; and *In re Russell,* 93 B.R. 703 (D.N.D.1988); *In the Matter of Kaczmarczyk,* 107 B.R. 200 (Bankr.D.Neb. 1989); *In re Schum,* 112 B.R. 159 (Bankr. N.D.Tex.1990); *In re Chavez,* 117 B.R. 733 (Bankr.S.D.Fla.1990); and *In re Woodall,* 123 B.R. 95 Order entered in the United States District Court for the Western District of Oklahoma on October 11, 1990, disallowing bifurcation.

The inherent conflict arises between two particular provisions of the United States Bankruptcy Code. The evaluation of secured claims is governed by 11 U.S.C. § 506(a) which states:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The mandatory and permissible provisions of a Chapter 13 Plan are set forth at 11 U.S.C. § 1322. Specifically at issue in this case is 11 U.S.C. § 1322(b)(2) which provides:

Subject to sections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

It has not been disputed that Bank possesses a claim which is secured only by a security interest in the real property that is the Debtors' principal residence and thus is afforded the protection of § 1322(b)(2). The sole question is whether this section is subject to the valuation determination of § 506(a).

B. The initial and logical place to begin our analysis is in reading the language of the statute itself to determine its plain meaning. *Watt v. Alaska,* 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981). Some Courts have determined that when the

phrase "claim secured" is utilized in § 1322(b)(2), this is translated as applying to only fully secured claims; while other Courts have determined that the term "claim" should be afforded the definition provided under 11 U.S.C. § 101(4) which includes both secured and unsecured portions of a claim. Compare *In re Hougland,* supra at p. 1182 with *In re Russell,* supra at p. 705.

In order to afford § 1322(b)(2) any relevant meaning, we must find that the "claim" referred to in this section applies to the entire claim so long as the security interest of the creditor is established in a mortgage was the Debtors' principal residence. Thus, this would include both the secured and unsecured portion of the creditor's claim. To determine otherwise would be to vitiate any protection that § 1322(b)(2) is obviously intended to provide home mortgage lenders.

Also, in applying the recognized tenets of statutory construction whereby statutes of specific applicability are given precedent over those of general applicability, we find that § 1322(b)(2) which only applies to cases under Chapter 13 [see 11 U.S.C. § 103(h) ] takes precedence over § 506(a) which is incorporated along with all other portions of Chapter 5 into Chapter 13 cases [see 11 U.S.C. § 103(a) ]. *U.S. v. Missouri Valley Construction Co.,* 741 F.2d 1542 (8th Cir.1984). To decide this, however, we must find that these statutes are in conflict. *Aeron Marine Shipping Co. v. U.S.,* 695 F.2d 567 (D.C.Cir.1982). We so find to a limited extent. These statutes are in conflict in that § 506 attempts to invade the protection of § 1322(b)(2) under the very narrow circumstances outlined therein; however, § 506(a) is applicable in Chapter 13 pertaining to any other secured claim which is not solely secured by the debtor's principal residence. Thus, we find that under the narrow language of § 1322(b)(2), the bifurcation theory asserted by the Debtors herein is not supported by the statutory construction afforded this Court to § 1322(b)(2).

C. Possibly the most interesting rationale to disallow bifurcation is found in the discussion of the legislative evolution of the limitation on the ability of the debtor to modify a claim secured by the debtor's principal residence contained in the case of *In the Matter of Kaczmarczyk,* supra at p. 202–203. In that case, Judge Minihan found that under the Bankruptcy Act, a Chapter 13 Plan could not alter, modify or address in any way claims secured by real property. See Bankruptcy Act, § 1006(2), § 1046(1). Chapter XIII under the Bankruptcy Act also prohibited the treatment of claims secured by personal property unless the consent of the secured creditor was obtained by the debtor.

Under the Bankruptcy Code,

> ... *like its predecessor [in the Bankruptcy Act], Chapter 13 maintains a distinction between claims secured by certain real property and claims secured by other collateral. Under Chapter XIII, a claim secured by real property could not be dealt with under the plan.... This basic rule has continued except as explicitly changed by the Bankruptcy Code.... Section 1322(b)(2) continued the prohibition on modifying the rights of holders of claims secured by real estate, but only with respect to real estate that constitutes the debtor's principal residence. If Congress has intended to change the manner in which a claim secured by a debtor's residence would be treated under the Code, it would have specifically limited § 1322(b)(2) to claims secured pursuant to § 506. However, as Congress did not explicitly change the treatment of claims secured by a mortgage on a debtor's residence, ... a continuity of treatment of such claims was intended*

*In re Kaczmarczyk,* supra at p. 203 (bracketed information added by Court).

Beyond this analysis by Judge Minihan, this Court finds very little under the legislative history which would aid this Court in this decision. That which is directly applicable to this case leads this Court to believe that § 1322(b)(2) "was designed to protect residential mortgagees in Chapter 13 cases by prohibiting any modification of the

mortgagees' secured lien with the sole exception of curing a default and reinstating the regular installment payments both of which are specifically allowed under § 1322(b)(5)." *In re Chavez,* supra at p. 736.

D. Although the Tenth Circuit has not spoken to this issue in a Chapter 13, it has stated that the use of § 506(a) to value the secured claim of a creditor in a Chapter 7 on property that has been abandoned from the estate is impermissible since "allowing lien avoidance under § 506(d) ... gives the debtors much more than the 'fresh start' to which they are entitled." *In re Dewsnup,* 908 F.2d 588, 593 (10th Cir.1990) as cited by Judge Alley in the case of *In re Woodall,* supra at p. 7 of the Order entered October 11, 1990. We also find that the use of § 506 in a Chapter 13 results in a benefit to the debtors which could not have been the intent of the framers of the Bankruptcy Code. To allow a debtor to use § 506(a) in a Chapter 13 proceeding in this manner tips the balance between the debtor's "fresh start" and the creditor's right to repayment much too far in favor of the debtor. The debtor has the ability to evaluate the current market on property values and file for Chapter 13 relief at the most opportune time. This Court will not permit this inequitable result.

■ We find, after reviewing the various authorities, the more enlightened and well reasoned view to be that § 506(a) cannot be utilized by a debtor to modify the claim of a creditor secured solely by an interest in the debtor's principal residence.

■ E. The parties have also raised the issue as to whether the Debtors' proposal to treat Bank's claim over the term of the Plan with a balloon payment at the end of said term is also an impermissible modification of the Bank's claim. In this Court's opinion, a proposed balloon payment of a claim secured only by an interest in the Debtors' principal residence is not a modification prohibited by 11 U.S.C. § 1322(b) *depending upon the terms of the mortgage.* If the mortgage allows pre-payment, the Debtors may exercise this right. If a penalty is provided under the note and mortgage, the Debtors must consider this amount in the Chapter 13 Plan.

A balloon payment will naturally bring into question whether the Debtors are committing all of their disposable income to the Plan if they are contemplating gathering money over the term of the Plan to satisfy the balloon payment or whether the Plan is feasible if the proceeds to make the balloon payment are to come from an "outside" source. These questions will be left to the confirmation of the Debtors' Amended Plan.

■ F. With regard to the allegations by the OTC, we concur with the authority provided by OTC that earned, pre-Petition interest on a tax claim is afforded priority status. *In re Ridgley,* 81 B.R. 65 (Bankr. D.Or.1987). However, we must find that any penalty assessed is necessarily in the nature of a punitive measure and not compensatory and is thus not afforded priority status. *In re Patco Photo Corporation,* 82 B.R. 192 (Bankr.E.D.N.Y.1988). As a result, the pre-Petition interest which is accrued shall be afforded priority status, while the pre-Petition penalties shall not.

G. While this Court recognizes that the claims of Bank are duplicitous, we are unable to determine to what extent. As a result, should the Debtors have any dispute as to the claims of Bank, an appropriate Objection to Bank's claims shall be required from the Debtors.

IT IS THEREFORE ORDERED that the confirmation of the Debtors' Chapter 13 Plan is denied due to an impermissible modification of a claim secured solely by a security interest in the Debtors' principal residence.

IT IS FURTHER ORDERED that Renewed Objection and Response to Debtors' Brief and the Supplemental Brief filed by Bank are hereby stricken as being unsolicited after failing to appear at a properly noticed hearing.

IT IS FURTHER ORDERED that the claim of the Oklahoma Tax Commission shall only afforded priority status as to pre-Petition interest, and tax assessed. No

884

such status shall be afforded the penalties assessed against the Debtors.

IT IS FURTHER ORDERED that the Debtors submit an Objection to Bank's claims no later than November 13, 1990. Should such an Objection be filed, Bank shall respond no later than November 20, 1990. A hearing on the Objection and Response shall be conducted on November 28, 1990 at 1:30 p.m.

Should the Debtors not wish to file an Objection to Bank's claims, the Debtors shall file an Amended Chapter 13 Plan no later than November 13, 1990. The confirmation hearing on said Plan shall be conducted on November 28, 1990 at 1:30 p.m.