**In re Leonard NOBELMAN and Harriet Nobelman, Debtors.**

**Leonard NOBELMAN and Harriet Nobelman, Appellants,**

v.

**AMERICAN SAVINGS BANK and Tim Truman, Trustee, Appellees.**

**Civ. A. No. 3–91–0753–H.**

United States District Court, N.D. Texas, Dallas Division.

June 24, 1991.

Rosemary J. Zyne, Dallas, Tex., for debtors.

Michael Schroeder Settle & Pou, Dallas, Tex., for American Sav. Bank.

Charles L. Kennon, III, Ft. Worth, Tex., for Truman.

### MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

This is an appeal from a final order of the United States Bankruptcy Court of the Northern District of Texas, Dallas Division in an action brought under the United States Bankruptcy Code. The Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).

The present appeal, a matter of first impression in this District, concerns the bankruptcy court's denial of confirmation of a Chapter 13 Plan of Reorganization that used the provisions of 11 U.S.C. § 506 to bifurcate a mortgage lien claim on the principal residence of Debtors Leonard and Harriet Nobelman into allowed secured and

allowed unsecured claims for purposes of treatment under the Plan. The Court concluded that using section 506 to bifurcate the claim impermissibly modified the rights of Appellee, American Savings Bank, N.A. ("ASB"), in violation of 11 U.S.C. § 1322(b)(2).

## I. Background.

The facts of this case are uncontested. On June 21, 1984, the Nobelmans executed a note in the amount of $68,250.00 payable to ASB, secured by a deed of trust on their primary residence. Murray Mortgage Company is the servicing agent of ASB. The deed of trust also provides for a security interest in an undivided .67% interest in the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents.

On August 6, 1990, the Nobelmans filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On August 14, 1990, ASB filed its proof of claim for $71,265.04, which was subsequently amended to $71,335.04. ASB's proof of claim provides that ASB's claim is secured only to the extent that its security interest is sufficient to satisfy the full amount of the claim, and that it is unsecured to the extent that it is insufficient.

The Nobelmans filed their Chapter 13 Plan of Reorganization (the "Plan") on August 31, 1990, which was later modified. The Plan values the residence at $23,500.00. The Nobelmans filed a motion for valuation pursuant to 11 U.S.C. § 506 along with the modifications to their Plan. At confirmation, Leonard Nobelman testified as to the value of the property; no controverting evidence of its value was offered by any other party.

The Plan proposes to make direct payments to ASB at the mortgage contract rate only up to the scheduled value of the collateral. The balance of ASB's claim—$41,257.66—is treated as a general unsecured claim under the Plan, payable pari passu. The unsecured creditors receive nothing under the Plan. The Nobelmans propose to cure the prepetition arrearages owed to ASB through their Plan.

Both ASB and the Standing Chapter 13 Trustee objected to the confirmation of the Plan on the grounds that, *inter alia*, the Plan purports to alter the lienholders' rights in violation of 11 U.S.C. § 1322(b)(2).

On February 13, 1991 the Bankruptcy Court entered its findings of fact and conclusions of law. The findings of fact are undisputed and are recited above. The bankruptcy court's conclusions of law find that "[t]he Plan impermissibly proposes to modify [ASB's] claim into secured and unsecured claims in violation of § 1322(b)(2)." Findings of Fact and Conclusions of Law entered February 14, 1991, at 3. Accordingly, on March 12, 1991 the bankruptcy court entered its order denying confirmation of the Nobelman's modified Chapter 13 Plan.

On March 21, 1991, the Nobelmans filed their Notice of Appeal.

## II. Standard of Review.

This Court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, but the bankruptcy court's conclusions of law are subject to de novo review. *See In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir.1986); *Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler )*, 106 B.R. 943, 952 (N.D.Tex.1989) [hereinafter *In re Lawler* ]. Because the facts of this case are undisputed, the sole subject of review are the bankruptcy court's conclusions of law. De novo review requires the Court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions. *See In re Lawler,* 106 B.R. at 952, *citing Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1210 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984).

## III. Discussion.

The issue before the Court concerns the interplay of two sections of the Bankruptcy Code. Section 1322(b)(2) of the Bankruptcy Code provides that

a Plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtors' principal residence, or of holders of unsecured

claims, or leave unaffected the rights of holders of any class of claims.

Section 506 of the Bankruptcy Code provides that

an allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under Section 553 of this rule, is a secured claim to the extent of the value of such creditor's interest in the estate.

The issue before the Court is whether the Nobelmans may bifurcate a claim secured only by a lien on their principal residence pursuant to section 506 and then modify the unsecured claim without violating section 1322(b)(2).

The Nobelmans rely heavily on the fact that three Courts of Appeals have addressed this issue and concluded that the type of bifurcation provided in the Nobelmans' Plan is not barred by section 1322(b)(2). For their part, appellees rely on a series of bankruptcy cases from several districts barring the sort of bifurcation contemplated by the Plan. The Court turns first to the cases cited by the Nobelmans.

The Ninth Circuit decided the seminal case that supports the Nobelmans' Plan. In *In re Hougland,* the Ninth Circuit stated that the plain meaning of the terms of the statutes at issue showed that "nothing in section 1322 affects the determination under section 506(a) that an undersecured claim can be divided into a secured portion and an unsecured portion." *Hougland v. Lomas & Nettleton Co. (In re Hougland),* 886 F.2d 1182, 1183 (9th Cir.1989) [hereinafter *In re Hougland* ].

The *Hougland* court started by examining section 506, stating that "it is clear that section 506(a) applies to Chapter 13 proceedings" pursuant to section 103(a), and therefore there is "no reason to believe that the phrases 'secured claim' and 'unsecured claim' in section 1322(b)(2) have any meaning other than those given to them by section 506(a)." *Id.* Accordingly, an undersecured claim has a "secured claim" component and an "unsecured claim" component. *See id.* at 1183–84.

The court then turned to the "other than" clause of section 1322.

That clause follows the secured claim portion of the sentence and precedes the unsecured claim portion. Certainly it refers to what preceded it, and indicates that a secured residential real estate claim will have special protection. Indeed, if the referent of the 'other than' clause is not the secured claim language that precedes it, what could the referent be? It would be most unusual if it were the unsecured claim language or the whole sentence. That strongly indicates that only the 'secured claim' portion is protected.

*Id.* at 1184. On the basis of this statutory construction, the *Hougland* court dismissed those courts that found that the "other than" clause refers to both the secured and unsecured portions of the undersecured claim as "beg[ging] the question". *Id.*

In *Wilson v. Commonwealth Mortgage,* the Third Circuit adopted the reasoning and ruling of the Ninth Circuit's *Hougland* decision, and held that "section 1322(b)(2) does not preclude the modification of any 'unsecured' portion of an undersecured claim." *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 127 (3rd Cir. 1990).

The statutory construction which some bankruptcy courts have used to support their position that the entire "claim," consisting of both the secured and the unsecured portion of the claim, cannot be modified has been roundly criticized by the Ninth Circuit in *Hougland.* We agree with the Ninth Circuit's view that because the "other than" phrase is best read to refer to secured claims, the "other than" phrase should be read to limit modification only of that portion of the claim that is secured.

*Id.* (citations omitted).

Most recently, the Tenth Circuit Court of Appeals considered this issue in *In re Hart,* and "join[ed] the Third and Ninth Circuits in holding that an undersecured mortgage is, for the purposes of the bankruptcy code, two *claims,* and that only the secured *claim* is protected by section

1322(b)(2)." *Eastland Mortgage Co. v. Hart* (*In re Hart*), 923 F.2d 1410, 1415 (10th Cir.1991) [hereinafter *In re Hart*]. Furthermore, the court contended that "while bifurcation, in the literal sense, may be a modification of the *mortgage* represented in the secured and unsecured claims, bifurcation is not, of itself, a 'modification' of the secured claim made impermissible by section 1322(b)(2). Indeed, the act of bifurcation recognizes, but does not affect, the secured claim." *Id.* Accordingly, while recognizing contrary decisions by bankruptcy courts in the Fifth, Eighth, Tenth,[1] and Eleventh Circuits, *see id.* at 1414, the Tenth Circuit found that "nothing in the plain language of section 1322(b)(2) ... instructs us to go beyond the Code's statutory definition of the term 'secured claims' to protect the unsecured portion of an undersecured home mortgage." *Id.* at 1415.

In contrast to the Third, Ninth, and Tenth Circuits, numerous bankruptcy courts have found that section 1322(b)(2) prohibits the type of bifurcation contemplated by the Nobelmans' Plan. In *In re Sauber*, the bankruptcy court for the District of Minnesota squarely confronted the Third Circuit's analysis in *Hougland*.

The Ninth Circuit, in *Hougland*, takes an overly technocratic approach in both analyzing the language of § 1322(b)(2) and (b)(5), and in relating § 506(a) to it. Although ostensibly undertaken in search of the plain meaning of these statutes, that meaning, and the proper setting of the statutes in the context of the overall scheme of the Code, is as clearly missed as the proverbial forest might be missed in examining the trees. *In re Sauber*, 115 B.R. 197, 199 (Bankr. D.Minn.1990).

The *Sauber* court argued that "what the *Hougland* court did not seem to appreciate, is that we are dealing with general and specific concepts that are intended to apply to, and govern, the rights of debtors and their creditors in different situations, and with different applications, depending on the particular Code purposes to be served." *Id.* In *In re Sauber*, the court found it plain that Congress provided certain home mortgagees with protection against modification of their rights which might otherwise result from the application of section 506 in Chapter 13 cases. The court found that "[t]he clearly focused concern [of section 1322(b)(2) ] is with the rights of *holders* of residential real estate mortgages" and that *Hougland* judicially removed most of that statute by its use of section 506(a) definitions.

The Court finds the analysis presented by the Ninth Circuit in *Hougland* to be strained and unconvincing. To begin with, the *Hougland* court simply assumed that because section 506(a) may be applied to Chapter 13 proceedings pursuant to section 103(a), every undersecured claim in a Chapter 13 proceeding is automatically transformed into a secured and unsecured claim. This assumption is the foundation upon which the entire *Hougland* decision rests, and it is flawed for at least two reasons.

First, under the Third Circuit's analysis the general provision of section 506 controls the more specific provisions of section

---

**1.** The bankruptcy courts in the Tenth Circuit were split on the issue. *Compare Brouse v. CSB Mortgage Corp.* (*In re Brouse*), 110 B.R. 539, 543–44 (Bankr.D.Colo.1990) ("Allowing a debtor to use Section 506(d) to avoid the lien on the unsecured portion of the debtor's principal residence does not negate the Section 1322(b)(2) prohibition of modifying the security interest in real property that is the debtor's principal residence."); *In re Ross*, 107 B.R. 759, 762 (Bankr. W.D.Okla.1989) (finding that the court had previously "erred in holding that § 1322(b)(2) prohibited a determination under § 506(a) as to the extent to which a claim is secured and unsecured"); *and In re Simmons*, 78 B.R. 300, 303 (Bankr.D.Kan.1987) (holding that § 1322(b)(2) does not prohibit bifurcation of an undersecured claim into secured and unsecured claims and that "[t]he cases that hold otherwise blindly focus on the ['other than'] clause of § 1322(b)(2)") *with First Interstate Bank of Oklahoma, N.A. v. Woodall* (*In re Woodall*), 123 B.R. 95, 98 (Bankr.W.D.Okla.1990) [hereinafter *In re Woodall*] (stating that "using § 506(a) to bifurcate would make the intent of § 1322(b)(2) a nullity, and the Court believes that Congress enacted § 1322(b)(2) for a purpose") *and In re Christiansen*, 121 B.R. 63, 64 (Bankr.D.Colo. 1990) (relying on the reasoning of *In re Sauber*, 115 B.R. 197 (Bankr.D.Minn.1990) in holding that § 1322 bars bifurcation of claims secured only by the debtor's residence).

1322(b)(2), whereas "[t]he specific provisions found in Chapter 13 *must* be accepted as controlling over the general provisions of Chapters 1, 3, and 5 which are applicable pursuant to § 103(a)." *In re Schum,* 112 B.R. 159, 161 (Bankr.N.D.Tex.1990) (emphasis added). "This Court accepts the tenet of statutory construction that, regardless of the inclusiveness of the general language of a statute, it does not apply or prevail over matters specifically dealt with in another part of the same enactment." *In re Chavez,* 117 B.R. 733, 734 (Bankr. S.D.Fla.1990) (construing sections 1322(b)(2) and 506(a) and (d)); *see Boullion v. Sapp (In re Boullion* ), 123 B.R. 549, 550 (Bankr.W.D.Tex.1990) [hereinafter *In re Boullion*]; *In re Russell,* 93 B.R. 703, 705 (Bankr.D.N.D.1988); *In re Hynson,* 66 B.R. 246, 249–50 (Bankr.D.N.J.1986). To find that section 1322(b)(2) controls over section 506(a), the Court must find that the two sections are in conflict. *See Aeron Marine Shipping Co. v. United States,* 695 F.2d 567, 576 (D.C.Cir.1982). It is clear that a limited conflict exists, in that section 506 can be used to undermine the protection afforded by section 1322(b)(2) under the very narrow circumstances defined by that statute.[2] Because this limited conflict between the statutes exists, the bifurcation theory advanced by the Third, Ninth, and Tenth Circuits is not supported by the language of the section 1322(b)(2).

Second, the *Hougland* court's analysis requires "that § 1322(b)(2) applies only after the secured debt has been reduced to the fair market value of the property. In other words, § 1322(b)(2) 'kicks in' only to prevent any further modification of this secured claim. The problem with this approach is that it renders § 1322(b)(2) essentially meaningless." *In re Hart,* 923 F.2d 1410, 1417 (10th Cir.1991) (Brorby, J., dissenting). It is a basic tenet of statutory construction that a statute should be interpreted so as not to render a part of it inoperative or superfluous. *See Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972); *Ensearch International Exploration, Inc. v. Attock Oil Co.,* 656 F.Supp. 1162, 1165 (N.D.Tex.1987). The bankruptcy court in *In re Schum* stressed this point in prohibiting a modification of the secured status of a claimant whose claim is secured only by the principal residence of the debtor. *See In re Schum,* 112 B.R. at 162; *see also In re Woodall,* 123 B.R. at 98 (stating that "using § 506(a) to bifurcate would make the intent of § 1322(b)(2) a nullity, and the Court believes that Congress enacted § 1322(b)(2) for a purpose").

Although the *Hougland* court purported to discern the plain meaning of section 1322(b)(2), it ignored the congressionally dictated definition of the term "claim", which is a "right to payment", whether secured or not. 11 U.S.C. § 101(5) [3]; *see In re Mitchell,* 125 B.R. 5, 6 (Bankr. D.N.H.1990) (quoting *In re Moran,* 121 B.R. 879, 882 (Bankr.E.D.Okla.1990) in finding that " 'in order to afford § 1322(b)(2) any relevant meaning, we must find that the "claim" referred to in this section applies to the entire claim' " as defined by section 101(4) of the Bankruptcy Code and therefore that " 'this would include both the secured and unsecured portion of the creditor's claim.' "); *Bayless v. Crabtree ex rel. Adams,* 108 B.R. 299, 305 (Bankr.W.D.Okla.1989) (holding that "claim" under bankruptcy laws includes virtually all legal or equitable rights to payment and must be broadly construed). As the court in *In re Sauber* correctly observed, the "clearly focused concern [of section 1322(b)(2) ] is with the rights of *holders* of residential real estate mortgag-

---

**2.** The *Hougland* court contended that sections 506(a) and 1322(b)(2) are not in conflict. *See In re Hougland,* 886 F.2d at 1184. The Court finds, however, that the plain terms of the two sections reveal an inescapable, although limited, conflict.

**3.** Although several courts refer to 11 U.S.C. § 101(4) as providing the Bankruptcy Code's definition of "claim," recent amendment of section 101 added a new section 101(3) (defining "federal depository institutions regulatory agency"), which resulted in the redesignation of section 101(4) as section 101(5). *See* 11 U.S.C.A. § 101, Historical and Statutory Notes (1979 & Supp.1991).

es." *In re Sauber,* 115 B.R. at 199. Rather than following the *Hougland* court and reading the general provisions of section 506 into the more specific provisions of section 1322 in order to change the meaning of the word "claim," the courts finding that section 1322(b)(2) prohibits the type of bifurcation sought by the Nobelmans "believe[ ] that the statute means what it says. Congress meant to establish a special protected class of creditors in a Chapter 13 case under § 1322(b)(2). To read the statute other than literally, as many courts have done, is to permit inroads into a protection afforded a class of creditors by Congress." *In re Boullion,* 123 B.R. at 551.

Although the *Hougland* court did not look to legislative history to determine the proper interplay between sections 506(a) and 1322(b)(2), the Third and Tenth Circuits did examine the historical context of those provisions. *See In re Hart,* 923 F.2d at 1412–13; *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d at 127–28. Put briefly, the legislative history shows that section 1322(b)(2) was a compromise between sharply contrasting proposals. So far as the precise issue presently before the Court is concerned, the intent of Congress in passing section 1322(b)(2) is not clearly expressed in the legislative history, although there is no question that Congress intended to accord home mortgagees preferred treatment under the law. *See Id.* at 128 (finding that "it is clear that the anti-modification provision" was "inserted on behalf of the home mortgage industry"); *In re Hougland,* 886 F.2d at 1185 (stating that "Congress intended to benefit residential real estate lenders"). The Fifth Circuit's analysis of section 1322(b)(2)'s legislative history does indicate, however, that section 1322(b)(2) was intended to prohibit the type of bifurcation sought by the Nobelmans.

In *Grubbs v. Houston First American Savings Association,* the Fifth Circuit analyzed the legislative history of section 1322 at length and found that the curing of arrearages in Chapter 13 plans was not a "modification" under the terms of the statute and therefore was not prohibited by sections 1322(b)(2) and (b)(5).

The final amendments to H.R. 8200 and S.B. 2266 (the latter being the Senate's amended version of the House bill), were accomplished by a series of agreed-upon floor amendments in both houses, by which differences between the two versions were reconciled and compromised. With regard to § 1322(b)(2), the Senate receded from its position that no "modification" was to be permitted of *any* mortgage secured by real estate; it instead agreed to a provision that modification was to be barred *only* as to a claim "secured only by a security interest in real property *that is the debtor's principal residence.*" This limited bar was apparently in response to perceptions, or to suggestions advanced in the legislative hearings that homemortgagor lenders, performing a valuable social service through their loans, needed special protection against modification thereof (*i.e.,* reducing installment payments, secured valuations, etc.).

*Grubbs v. Houston First American Savings Ass'n,* 730 F.2d 236, 246 (5th Cir.1984) (citation omitted).

In addition, "[i]t must also be remembered that the prior Bankruptcy Act did not allow Chapter 13 debtors to modify secured claims." *In re Mitchell,* 125 B.R. at 8. Because the legislative history of section 1322(b)(2) does not indicate any congressional intent to alter the status quo, "[t]his suggests Congress did not want to effect a change with respect to home mortgages." *Id.*

I conclude that § 1322(b)(2) continued the prohibition on modifying the rights of holders of claims secured by real estate, but only with respect to real estate that constitutes the debtor's principal residence. If Congress had intended to change the manner in which a claim secured by a debtor's residence would be treated under the Code it would have specifically limited § 1322(b)(2) to claims secured pursuant to § 506. However, as Congress did not explicitly change the treatment of claims secured by a mortgage on a debtor's residence, I conclude

that a continuity of treatment of such claims was intended.

*In re Kaczmarczyk,* 107 B.R. 200, 203 (Bankr.D.Neb.1989).

Following the interpretation of the intent of Congress in enacting section 1322(b)(2), the Court finds that applying section 506(a) to the secured claim at issue in this case would mean allowing a "modification" prohibited by the statute. "The proposed modification of the debt at issue would have the effect of treating real property secured by only a lien on the debtor's principal residence in the same manner as any other property secured by a lien. Such treatment would frustrate the legislative intent of § 1322(b)(2)." *In re Schum,* 112 B.R. at 162. Furthermore, "bifurcation of § 1322(b)(2) claims would result in a windfall to debtors who would then repay only the value of their residence, and reap the benefit of their discharged 'unsecured' claim if property values rise." *In re Woodall,* 123 B.R. at 97–98. Such a use of section 506(a) to bifurcate claims into secured and unsecured claims would produce "a result contrary to the Bankruptcy Code's intended 'fresh start.'" *Id.* at 98.

The Court is aware of the conflicting decisions of courts in other jurisdictions. The plain language of section 1322(b)(2) and the Fifth Circuit's analysis in *Grubbs v. Houston First American Savings Association* convince the Court that a modification of the secured status of a claimant whose claim is secured only by the principal residence of the debtors is prohibited under the Bankruptcy Code. "To determine otherwise would be to vitiate any protection that § 1322(b)(2) is obviously intended to provide home mortgage lenders." *In re Moran,* 121 B.R. at 882. Accordingly, the ruling of the bankruptcy court is AFFIRMED.

The Nobelmans also argue that their requested bifurcation is allowed under section 1322(b)(2) because the deed of trust at issue here provides for a security interest in an undivided .67% interest in the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents, in addition to the residence

itself. The Court finds this contention to be without merit. *See Equity Investment Co. v. Moreland (In re Moreland),* 124 B.R. 921, 922 (Bankr.D.Conn.1991) (finding meritless an argument that because a mortgage extended to such things as rents, royalties, stock and fixtures the mortgagee's claim was not secured "only" by realty).

### IV. Conclusion.

For the reasons stated above, the Order of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, entered March 12, 1991 is AFFIRMED.

SO ORDERED.