**In re Calvin Warren BREIT and Mildred Jacobs Breit, Bankrupts.**

**David H. ADAMS, Trustee, Calvin Warren Breit and Mildred Jacobs Breit, Appellants,**

**v.**

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellee.**

**Nos. 76–156–NN, 76–157–NN.**

United States District Court, E. D. Virginia, Newport News Division.

Sept. 13, 1978.

Edwin C. Kellam, Joseph J. Lawler, Norfolk, Va., for bankrupts.

Robert C. Stackhouse, Norfolk, Va., for trustee.

Gregory Hrebiniak, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellee.

## OPINION AND ORDER

CLARKE, District Judge.

This appeal challenges a decision of the Bankruptcy Judge that the Internal Revenue Service has a valid claim for income taxes against appellants Calvin and Mildred Breit for the year 1973. Specifically, appellants contend that they were entitled to deduct $550,000 in loans from the Virginia National Bank to Thomas Circle Inn, Inc., as a net operating loss on their 1973 tax return because the loans were in reality investments by appellants in that corporation. The Bankruptcy Judge, however, found as a fact that the loan from the bank was to the corporation and not to appellants.

The pertinent facts of this case, as discerned from the record and from the brief decision of the Bankruptcy Judge, are as follows: Sometime in 1971, one Norman Groh and G. L. Lavenstein, who were in the business of owning, operating, and developing hotels and motels, formed a corporation that they called Thomas Circle Inn, Inc. and designated a "Subchapter S corporation" for federal income tax purposes. They invested little, if any, money in the corporation. A short time later, on behalf of the corporation, they negotiated a leasehold on a Ramada Inn in Washington, D.C. In December 1971, Groh and Lavenstein sold their entire interest in the corporation for $150,000, of which appellant Calvin Breit paid at least $75,000. Nevertheless, Groh and Lavenstein agreed to remain obligated as guarantors of the lease until its expiration.

In 1973 Groh, acting as catalyst, persuaded the Virginia National Bank to make two loans to Thomas Circle Inn, Inc. The first loan of $200,000 was to be used by the corporation to repay a loan held by one Atlantic National Bank. Another $350,000 was borrowed to serve as a down payment on the purchase of the Ramada Inn by the corporation. Appellants Breit, C. Arthur Rutter, Groh, and the estate of the by-now-deceased Lavenstein (of which the bank was executor) agreed to guarantee the loans. When it could not complete per-

formance on the contract of purchase, Thomas Circle Inn, Inc. lost the $350,000. Although the loans were never repaid, the Breits deducted them on their 1973 income tax return, contending that the payments were not loans from the bank to the corporation but rather investments in a Subchapter S corporation by its owners and thus deductible under section 1374 of the Internal Revenue Code.[1]

Because they sought the benefit of a deduction, appellants had the burden of proving that they are entitled to it. A decision of the Internal Revenue Service is presumed to be correct, and appellants have the burden of proving the contrary. *E. g., Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *General Insurance Agency, Inc. v. Commissioner of Internal Revenue,* 401 F.2d 324, 329 (4th Cir. 1968). The Bankruptcy Judge ruled that appellants had not carried their burdens successfully, that the facts and legal conclusions in the Government's brief contained "no significant flaws," and that the Government's claim for taxes and the disallowance of appellants' deduction were therefore valid. This Court must accept the findings of fact of the Bankruptcy Judge unless they are clearly erroneous. Rule of Bankruptcy Procedure 810. However, the Court is free to draw inferences from undisputed facts. *See, e. g., Shaw v. United States Rubber Co., Naugatuck Chemical Division,* 361 F.2d 679 (5th Cir. 1966).

The sole, central issue in this case is the nature of the two 1973 loans. If they were loans from the bank to the corporation, appellants could not have invested them in the corporation and may not deduct them as operating losses. On the other hand, if the transactions were actually loans from the bank to appellants who then invested the funds in the corporation, the $550,000 was a capital contribution deductible under section 1374. *E. g. Blum v. Commissioner of Internal Revenue,* 59 T.C. 436 (1972). The issue is a mixed question of law and fact. Although the decision of the Bankruptcy Judge is brief indeed, he did find as an ultimate fact that the loan was made to the corporation and not to appellant Calvin Breit. After examining the record in this case, the Court is convinced that this finding was not clearly erroneous

No single factor determines whether the loans were in fact by the bank to appellants followed by a capital contribution on their part. Each case must be decided on its own particular facts. *E. g., Blum v. Commissioner of Internal Revenue, supra,* at 439; *Santa Anita Consolidated, Inc. v. Commissioner of Internal Revenue,* 50 T.C. 536, 550 (1968). While appellants are not estopped from challenging the nature of the transaction, *J. A. Maurer, Inc. v. Commissioner of Internal Revenue,* 30 T.C. 1273 (1958), the record does not support their claim that the guaranteed loans were equity contributions on their part.

Appellants advance several arguments in support of their argument. Most of these points are stated explicitly, but one point, while unstated, is critical to their case. Appellants cannot claim a deduction based upon their status as guarantors of the loans, for a contract of guaranty is an assumption of secondary liability and not a deductible "indebtedness" within the mean-

---

1. 26 U.S.C. § 1374 provides in pertinent part:

    (a) *General rule.*—A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.

    (b) *Allowance of deduction.*—Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends . . . ., an amount equal to his portion of the corporation's net operating loss . . .

    (c) *Determination of shareholder's portion.*—

    . . . . .

    (2) *Limitation.*—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

    . . . . .

    (B) the adjusted basis . . . of any indebtedness of the corporation to the shareholder . . . .

ing of section 1374. *See, e. g., Underwood v. Commissioner of Internal Revenue,* 535 F.2d 309 (5th Cir. 1976); *Perry v. Commissioner of Internal Revenue,* 47 T.C. 159, 163 (1966), *aff'd on other grounds,* 392 F.2d 458 (8th Cir. 1968); *American Industrial Corp. v. First & Merchants National Bank,* 216 Va. 396, 219 S.E.2d 673 (1975). Only after the guarantor performs on the guaranty contract will the debtor's indebtedness to the creditor become an "indebtedness" to the guarantor under section 1374. *See Putnam v. Commissioner of Internal Revenue,* 352 U.S. 82, 85, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956). Since appellants produced no evidence that the bank has attempted to collect from them[2] or from the other guarantors (*see* Deposition of Doyle E. Hull, page 6, lines 10–23), appellants rest their claim upon their alleged ownership of the corporation. The loans, they assert, were really made to them as owners of the corporation, but were recorded as transactions between the bank and the corporation in order that the bank might collect a higher interest rate. (*See* Deposition of Calvin W. Breit, page 4, lines 3–7; Deposition of Norman D. Groh, page 7, lines 3–7.) But, having deducted the entire amount of the loans, appellants have the burden of proving that they owned all of the corporate stock, and they failed to meet that burden. True, Calvin Breit testified that he and his wife were sole owners. However, Norman Groh, who with G. L. Lavenstein, first owned the corporation, could testify only that appellants paid at least $75,000 of the $150,000 selling price and that the remaining $75,000 was paid either by appellants or by C. Arthur Rutter. If Rutter was not a co-owner, it is difficult to understand why he would have agreed to be one of the guarantors on the two loans in question. The record indicates that Thomas Circle Inn, Inc. was jointly owned by appellants and Rutter. Therefore, the Bankruptcy Judge was quite justified in finding that the corporation was not the alter ego of appellants.

■ Appellants also contend that the financial condition of the corporation at the time of the loans reveals the "true" nature of the transactions. The corporation, they say, was "totally insolvent and incapable of continuing on in the absence of additional capital." Thus, continues the argument, the bank was relying upon the guarantors for repayment. Groh and Calvin W. Breit so testified in their depositions, and appellants rely heavily on a statement by Doyle E. Hull, a corporate officer of the bank, that the corporation was overdrawn and the bank was looking to the guarantors for repayment. Mr. Hull, however, did not participate in the loan transactions, and his comments were in part responses to hypothetical questions and in part a recitation of past bank records. Significantly, appellants failed to depose M. M. Miller, the bank senior vice president, who was loan officer. In other words, appellants introduced no direct evidence that the bank knew of the corporation's alleged insolvency when it approved the loans. Without such evidence of knowledge by the lender, the insolvency of the corporation is of little significance. *See, e. g., Santa Anita Consolidated, Inc. v. Commissioner of Internal Revenue,* 50 T.C. 536, 552–53 (1968).[3]

Other circumstances surrounding the loan transactions do not, in this case, indicate that the loans were being made to appellants. Hull, the bank officer, testified that no financial statement or borrowing resolution from Thomas Circle Inn, Inc. was on file for either loan. Theoretically this fact

---

**2.** In oral argument, appellants' counsel argued that if the Court found that the loan was not from the bank to the appellants alone, then the loan should be considered as one to the entire group of guarantors of which appellants were a part. Thus, appellants would be allowed to deduct part but not all of the $550,000. Because this point was apparently not raised before the Bankruptcy Judge, the Court will not consider it.

**3.** Even if the bank did look to the guarantors for repayment, appellants have advanced no reason why they should be entitled to deduct the *entire* $550,000. Their fellow guarantors (Rutter, Groh, and the Lavenstein estate) were equally liable in the event of nonpayment by the corporation, and appellants failed to show why all the guarantors should not share equally in the deduction.

would help to support appellants' theory, but it is not decisive. Miller, who negotiated the transactions for the bank, could have confirmed and explained the alleged bypassing of normal procedures but appellants made no effort to depose him. Perhaps the bank required no statement because the data supplied by a relatively new corporation with limited operations might have been nonexistent or extremely unreliable. Appellants also never revealed the membership of their board of directors, and for all the Court knows, appellants may have been the only directors and a borrowing resolution would have been meaningless. The burden was on appellants to show that the bank required no resolution or statement because the corporation was merely serving as a "vehicle." They did not do so.[4]

Appellants argue that the purpose of the loans is either helpful to their case or, alternatively, irrelevant. This argument is without merit. The transaction was arranged, they say, for the sole purpose of enabling the bank to recover a higher interest rate. This arrangement allegedly disguised the true arrangement between appellants and the bank. While Calvin Breit and Groh did support this contention in their testimony, such evidence was insufficient to show that the higher interest rate was the *bank's* motivation. Even the bank officer who testified made no reference to the motivation, and the few documents offered in evidence do not mention it. Appellants' counsel also stated in oral argument that the Court should consider the purpose of the form of the loan but not the ultimate purpose of the funds loaned—*i. e.,* repayment of a corporate debt and initial pay-

ment on the purchase of the leasehold property. The Court emphatically disagrees. The purpose of the funds is quite relevant in determining whether the transactions were loans to appellants. In this case, the purpose of the loans is undisputed. Appellants offered absolutely no evidence that the funds would or could be used for any purposes other than the corporation's. The burden was on appellants to show that they were free to use the money as they wished. Instead, the evidence clearly shows that appellants represented to the bank that the funds were solely for the corporation's use and that the bank loaned the funds in reliance on that representation.

Appellants ask the Court to find that the bank in substance loaned the sums to them, not the corporation, and that appellants then proceeded to advance such funds to the corporation. Appellants, however, have presented insufficient proof. In fact, the evidence in this case is contrary to their contention. The loan request offered as Government Exhibit 2 states unequivocally that the $350,000 loan was made to Thomas Circle Inn, Inc. The request also indicates that the corporation was assuming an unconditional obligation to pay on a fixed maturity date. Aside from the testimony of two guarantors, appellants offered no evidence that the bank had no expectation of repayment from the corporation.[5] Perhaps the bank officials who handled the loan and the records of the corporation and the bank contain evidence to the contrary, but they are conspicuously absent here. This Court must presume that the Commissioner's ruling is correct unless and until appellants overcome that presumption with

---

**4.** Another factor which might have cast suspicion on the true nature of the loans, but which appellants did not cite, was the basis of credit. Both loans were unsecured. Yet this factor alone does not preclude a finding of a bona fide indebtedness. *See, e. g., American Processing & Sales Co. v. United States,* 371 F.2d 842, 852, 178 Ct.Cl. 353 (1967); *Santa Anita Consolidated, Inc. v. Commissioner of Internal Revenue,* 50 T.C. 536, 553 (1968). As appellant Calvin Breit testified in his deposition (page 13, lines 10–14), the corporation's assets (other than the leasehold and the option to buy) were extreme-

ly limited. Therefore, a secured loan was impossible in this case, and the only security which would protect the bank was a guaranty. *Santa Anita Consolidated, Inc., supra,* at 553–54.

**5.** The corporation was operating a Ramada Inn in a city that attracts millions of tourists each year. It is not inconceivable that the bank expected the corporation to repay the loans from cash flow rather than profits. Appellants offered no evidence to the contrary. *See Santa Anita Consolidated, Inc., supra,* at 553.

convincing evidence. Appellants have not done so. Therefore, the decision of the Bankruptcy Judge is hereby AFFIRMED.