**In the Matter of David Eugene FOSTER and Victoria Jean Foster, Debtors.**

**Bankruptcy No. 85–10626.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

May 29, 1986.

---

Grant F. Shipley, Fort Wayne, Ind., for debtors.

Robert E. Grant, Fort Wayne, Ind., for claimant.

## ORDER

ROBERT K. RODIBAUGH, Chief Judge.

David Eugene Foster and Victoria Jean Foster filed their joint chapter 13 petition on July 31, 1985 in response to a mortgage foreclosure action initiated by the Federal Land Bank of Louisville on June 18, 1985. Their chapter 13 plan provides essentially that the secured creditors will receive the value of their collateral, while the unsecured claims share in $3,600, to be paid through the chapter 13 trustee. Land Bank objected to the Fosters' Plan and requested an evidentiary hearing. The contested confirmation hearing was held, and the parties were granted an opportunity to submit briefs before this matter was taken under advisement on April 22, 1986.

David and Vicki Foster own a 162-acre farm in Steuben County, Indiana. David works full time in a nearby factory and also as a farm hand for a neighbor. Vicki has an accounting degree and until recently was employed as the computer supervisor for a local bank. She is now babysitting in her home for several children so that she can personally care for one of her three children who suffers from spina bifida. Although the Fosters have farmed, the tillable land and hog barns are now rented to local farmers on a cash or share crop basis.

Land Bank has raised several objections to the Fosters' Plan, which can be restated as contentions that:

1. Factually, the Fosters' income either is insufficient to feasibly cover both their living expenses and the payments required under the plan or excessive such that they are failing to commit all their disposable income for at least three years, or

2. Legally, 11 U.S.C. § 1322(b)(2) and 11 U.S.C. § 1325(c) protect Land Bank from the modification of its rights contemplated by the plan.

The parties stipulated to several facts and amendments to the plan at the beginning of the trial.[1] They agreed that Land Bank's claim on the date of the petition totaled $141,623.59 and is secured by a first mortgage on 162 acres of Steuben County real estate valued at $104,650 and a first lien on the Fosters' Land Bank stock, which has a par value of $7,900. The Fosters are current on monthly payments of $1,218.63. Land Bank accelerated the mortgage debt on May 1, 1985. The stipulated amendment would provide for Land Bank to be 'crammed down' to the $109,880 value of the proposed retained collateral, with that sum to be paid over the original contract term at the Land Bank's variable market interest rate, which is currently 12¾%. The final payment would not be due until January 1, 2011.

Land Bank's first major argument is primarily factual. It contends that the Fosters' plan is not, as a practical matter, feasible, since the Foster's income is insufficient to fund the plan, and Mr. Foster can not work the long hours required to generate the required income for the years necessary to retire the debt. The Fosters' projected after tax income is approximately $31,842 per year. This figure assumes that Mr. Foster will work 40 hours per week in the factory and an additional 36–38 hours per week as a farm hand. His hourly rate in the factory is significantly higher than as a farm hand, to the extent he works overtime in the factory he will be able to work correspondingly less on the farm and maintain the same income. Mrs. Foster is earning about $100 per month babysitting. She is well qualified and may find it necessary to return to the regular work force. They also anticipate a return from the tillable acreage and hog houses of about $6,475 per year; however, this is a variable figure subject to weather and market forces beyond their control. The debtors' living expenses have been estimated at $13,584 per year, which when added to the Land Bank's payment of $14,623.56 and the trustee's $1,200.00 payment, yields a minimum cash flow requirement of $29,407.56. Based on the Fosters' hypothetical income and the cash flow requirements required by the proposed plan, Land Bank contends that either the income figures are not sustainable for an extended term, or else the Fosters are withholding a portion of their disposable income in contravention of 11 U.S.C. § 1325(b)(1)(B). The court does not agree. The projected disposable income of a family like the Fosters can not be estimated with the degree of certainty it could be for a family with a fixed income. The return on the farm is subject to many variables. The total income projected by the Fosters is optimistic unless Mrs. Foster returns to the regular work force. The hours contemplated by Mr. Foster are long, but not so long they can not be sustained. The living expenses of the Fosters are probably going to exceed their very conservative estimate. A food estimate of $175 per month for a family of five is not realistic. Increasing the food budget reduces the Fosters' retained disposable income to nothing.

Land Bank's second argument is primarily legal, contending that 11 U.S.C. § 1322(b)(2) and § 1325(c) protect it from the modification sought. The court agrees in part. A chapter 13 plan can only provide for payments beyond the term of the plan where the contractual payments on a long-term debt are to be maintained. *In re Hildebran,* 54 B.R. 585 (Bkrtcy.D.Or.1985). The plan at bar proposes to amortize the 'crammed down' debt over the original contractual term under the terms of the original contract. This is certainly a different situation than in *Hildebran* where the debtors wanted to convert a short-term obligation into a long term obligation, but the court is of the opinion that absent the cure situation addressed by § 1322(b)(5), no payments beyond the term of the plan can be involuntarily imposed on a creditor. This does not require amortization of the debt over the term of the plan; a balloon payment or refinancing after three to five years may be appropriate. Such a require-

---

1. The amendments to the plan were to have been reduced to written form and submitted.

ment is well-considered and not the absurdity the Fosters contend. The debtors, in a situation where they are not curing a default, are not bound by any aspect of the original contract. They are free to abandon all their Land Bank stock and to argue that some other interest rate [2] would fairly compensate Land Bank for the time value of its investment.

 The bankruptcy code contains special protection for the traditional home lender in 11 U.S.C. § 1322(b)(2) which prohibits any modification other than a cure of a pre-existing default. This special protection was created as a narrow exception to the generally broad power of a chapter 13 debtor to restructure his debts. Congress created the special protection seeking to decrease a lender's risk in residential real estate loans. *In re Lindamood,* 34 B.R. 330 (Bkrtcy.W.D.Va.1983). Land Bank in the case at bar is financing a large income-producing tract of land upon which the debtors happen to reside. Commercial lending like that engaged in by Land Bank is not protected by 11 U.S.C. § 1322(b)(2). *Matter of Leazier,* 55 B.R. 870, 13 B.C.D. 1126, BLR ¶ 70,912 (Bkrtcy.N.D.In.1985). The incidental presence of a dwelling does not defeat the essentially agricultural nature of the transaction. *Jonak v. John Hancock Mut. Life Ins. Co.,* 629 F.Supp. 90 (D.Neb.1985).

 The Fosters also contend that the first lien held by Land Bank in the Fosters' Land Bank stock constitutes additional security such that Land Bank does not hold the "claim secured only by a security interest in real estate property" which is required to invoke the protection of 11 U.S.C. § 1322(b)(2). The court does not agree. The value, if any, of such stock appears illusory. The circumstances of the farmer's 'purchase' and 'return' of his stock appear to be a formality without any substantive meaning. Credit Unions and other lenders which take a security interest, voluntarily or not, in a borrower's member-

 ship interest do not appear to have taken additional security, as that term is used in 11 U.S.C. § 1322(b)(2), until there has been a showing that such an interest has actual independent value.

This opinion is consistent with *Matter of Clark,* 738 F.2d 869 (7th Cir.1984). *Clark* addressed the question of whether 11 U.S.C. § 1322(b)(2) prevented a cure of a mortgage default. Clearly, it does not. *Clark* happened to be a Land Bank case; however, the question of whether 1322(b)(2) applies to commercial farm lenders was not actually or necessarily litigated; in fact, given the court's holding that § 1322(b)(5) prevails over § 1322(b)(2), it is irrelevant to the opinion whether a § 1322(b)(2) lender was involved. The construction of *Clark* advanced by Land Bank is rejected.

Wherefore, the Fosters' chapter 13 plan is DENIED confirmation because it fails to provide for payment in full of the amount of Land Bank's secured claim as required by 11 U.S.C. § 1322(c).

SO ORDERED.

---

**2.** The judgment rate in both Federal and Indiana courts is below 12¾%; no evidence was presented as to market rates.