### In re Willard Coy STILES and Ethel Alvernia Stiles, Debtors.

#### Bankruptcy No. 87–00512.

United States Bankruptcy Court,
N.D. Alabama.

June 22, 1987.

---

Thomas M. Semmes, Anniston, Ala., for debtors.

George C. Day, Gadsden, Ala., for creditor.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW ON PROPOSED
MODIFICATION OF RIGHTS OF
CREDITOR HOLDING SECURED
CLAIM

L. CHANDLER WATSON, Jr., Bank-
ruptcy Judge.

The above-styled case was commenced by the debtors' petition under title 11, chapter 13, United States Code, filed January 20, 1987, and the case continues to be pending before this Court under said chapter. The debtors proposed a plan to pay the secured claim of Associates Financial Services Company of Alabama, Inc. (hereinafter Associates), with interest at the rate of 10% per annum, in 60 monthly installments, and through the standing chapter 13 trustee.

The interest rate proposed by the debtors (10%) has provoked Associates to file (1) a motion for relief from the stay provided by 11 United States Code § 362(a), (2) a motion for this Court to revoke its order denying relief from the stay, (3) a rejection of the plan, and (4) an objection to confirmation of the plan. At a confirmation hearing on June 2, 1987, the debtor Willard Coy Stiles testified that the going rate for the type of loan on which Associates' claim is based would be 17%; and, no other evidence being presented on the question of a current rate of interest for this type of loan, the debtors' attorney stated that the debtors would offer that 17% interest be paid on Associates' secured claim—to be proposed in a *fourth* amendment to the original plan. Associates is still not enamored by the interest rate proposed and calls upon the Court to protect its contract from modification by the debtors. This creditor alleges that its claim is "secured only by a security interest in real property that is the ... [debtors'] principal residence" and that the creditor's rights cannot be modified by the debtors in the face of the provisions of 11 United States Code § 1322(b)(2).[1] There is no dispute that Associates' claim is secured "by a security interest in real property that is the ... [debtors'] principal residence." The debtors, however, dispute the contention by Associates that its claim is "only" thus secured, and the parties called upon the Court to resolve the controversy.

*Findings of Fact—*

From the Court's file for this case maintained by the clerk, of which the Court now takes judicial notice, the testimony presented, and the matters stated by counsel and conceded at the hearings, the Court finds the facts relevant to this matter to be:

1. Associates has an allowed claim (proof of claim No. 14) in the sum of $11,711.47, fully secured by a second mortgage on the debtors' real estate, which is their principal residence;

2. This claim represents the principal and accrued interest, at the time the debtors' petition was filed, with respect to a loan made by Associates to the debtors and secured by their mortgage to Associates, covering their home;

3. The loan transaction is detailed in the debtors' promissory note—designed "Loan Agreement"—which recites a loan date of November 4, 1985, an interest rate of 21.03% per annum, an amount financed of $13,315.76, and a total of 84 monthly payments of $25,536;

4. The "amount financed" is shown in the note to include a "credit life" insurance premium of $2,681.26; and

5. Associates' claim is also secured by a policy of life insurance on the life of each debtor or one of them.

*Conclusions by the Court—*

To the Court, the inescapable conclusion is that Associates' claim is secured both by a security interest in the debtors' principal residence and by a security interest in the policy of insurance on the debtors' lives or on the life of one of them. Associates' counsel argues that the "credit life" insurance has no value to Associates as long as the insured is alive and that the claim must, for present purposes, be found to be se-

---

**1.** "[T]he plan may ... modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2).

cured only by the debtors' principal residence. The Court is referred by creditor's counsel to the holding by Chief Judge Rodibaugh in *Matter of Foster*, 61 B.R. 492 (Bankr.N.D.Ind.1986).[2]

In that opinion it was stated that the value of a farmer's stock in a federal land bank (the creditor) "appears illusory" under the circumstances of the purchase and return transaction between the farmer and the land bank. On that basis, this court rejected the debtors' contention that the land bank stock pledged to the creditor constituted additional security so as to permit modification of its claim, despite the provisions of 11 United States Code § 1322(b)(2). The decision by the court in the *Foster* case to refuse confirmation of the chapter 13 plan rested upon the provisions, not of section 1322(b)(2), but of section 1322(c), which forbade confirmation because the plan proposed to pay the modified land bank claim over a period exceeding five years. This was held not to be a provision to maintain payments on a long-term debt but a proposal of a plan to exceed the five-year statutory limit.

The present court, however, takes no issue with the general proposition that worthless collateral does not defeat a creditor's invocation of the protection afforded to certain creditors under the provisions of section 1322(b)(2). This section has a "legislative history" which states its raison d'être, but that appears irrelevant to the present matter. Here, the creditor has a security interest in the life insurance as well as in the debtors' residence and the prohibition contained in section 1322(b)(2) does not prevent modification of Associates' claim. Its argument that the life insurance is of no value to it as long as the insured is alive is specious, being defeated by its own conduct in accepting it as collateral.

If it may be assumed that Associates received some portion of the insurance premium of $2,681.26 charged to the debtors,

the argument might be made that its motive in regard to the "credit life" insurance was solely to sell the insurance and make a commission in addition to its 21.03% rate of interest.[3] Thus, it might be said that Associates placed no other value on the "credit life" insurance and considered that it had present value only to the debtors. If that were the case, that result could have been achieved by merely selling the debtors life insurance for a declining amount with no provision that any proceeds which would come into being upon the death of the insured would be paid to Associates in satisfaction of its claim.

Actually, there is no direct evidence that the life insurance was collateral for this debt, but the debtors' contention wholly rested upon that proposition, which Associates never contradicted. Also, it is in Associates' "Loan Agreement" form that the insurance was described as "credit life," a term commonly referring to insurance sold to debtors for the purpose of satisfying any unpaid balance of the debt existing upon death of the debtor during the intended term of a loan. Finally, it is unseemly for Associates to be the beneficiary of life insurance for which it charged a premium of $2,681.26 and to contend that such interest has "no value" to it.

Neither Associates' motion for reconsideration of the order denying relief from the stay under 11 United States Code § 362 nor its objection under 11 United States Code § 1322(b)(2) to confirmation of the chapter 13 plan is well-grounded, and each will be denied or overruled.

---

**2.** 14 B.C.D. 580.

**3.** Actually the rate was higher in the event of a prepayment of the loan, because, in that event, the loan agreement provided that "the unearned portion of the interest charge and loan fee [would be] computed on the Rule of 78's."