**In re Danny L. HART and Joanne E. Hart, Debtors.**

**EASTLAND MORTGAGE CO., Plaintiff–Appellee,**

v.

**Danny L. HART and Joanne E. Hart, Defendants–Appellants.**

**No. 89–6325.**

United States Court of Appeals, Tenth Circuit.

Jan. 17, 1991.

Rehearing Denied Feb. 26, 1991.

James L. Bentley, UAW–GM Legal Services Plan, Oklahoma City, Okl., for debtors-defendants-appellants.

Sandy Schovanec, Phillips McFall McVay Sheets & Lovelace (Melvin R. McVay with her on the briefs), Oklahoma City, Okl., for plaintiff-appellee.

Before MOORE, TACHA and BRORBY, Circuit Judges.

PER CURIAM.

The issue in this bankruptcy case is whether a home mortgage protected by 11 U.S.C. § 1322(b)(2) can be bifurcated into secured and unsecured portions based on the fair market value of the property under a threshold application of the provisions of 11 U.S.C. § 506(a) to an undersecured mortgage. The district court found that the attempt to do so was a modification of the mortgage and, as such, was improper. We hold that the bifurcation was a recognition of the legal status of the creditor's interest in the debtors' property and not a modification of the mortgage. We reverse.

Danny L. Hart and Joanne E. Hart, debtors in the chapter 13 bankruptcy action from which this appeal arose, took out a loan secured by a mortgage held by the Federal National Mortgage Association and serviced by appellee Eastland Mortgage Company, a creditor in the bankruptcy action. The mortgage described the security for the loan to be the real property to which the Harts' mobile home is attached,

> TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

*In re Hart*, No. 88–6229–TS, Order Concerning Debtors' Motion to Amend Plan at 5 (Bankr.W.D.Okla. Mar. 24, 1988) (hereafter, the "bankruptcy court order"). At the time the Harts submitted their chapter 13 wage earner plan to the bankruptcy court for approval, a $55,000 balance remained on Eastland's note. However, the fair market value of the property described in the mortgage was stipulated to be $30,000. One part of the Harts' chapter 13 plan, approved by the bankruptcy court without objection, referred to the mortgage as a $55,000 secured indebtedness, while other parts of the plan referred to the mortgage as a $30,000 secured and $25,000 unsecured indebtedness. When the Harts filed a motion to amend the plan, correcting what they referred to as a "scrivener's error" so that the plan consistently listed $30,000 of the debt as secured and $25,000 as unsecured, Eastland objected.

The bankruptcy court granted the Harts' motion to amend and approved the plan over Eastland's objections. Eastland appealed to the district court, and that court reversed, holding modification of the mortgage to be inappropriate, given the protection of residential mortgages granted by 11 U.S.C. § 1322(b)(2). *In re Hart*, No. CIV–89–797–T, Order (August 28, 1989) (hereafter, the "district court order"). The Harts appealed to this court.

The standard by which this court reviews district court decisions arising on appeal from the bankruptcy court was set forth in *Hall v. Vance*, 887 F.2d 1041 (10th Cir. 1989):

> It is well established that neither this court nor the district court can disturb a bankruptcy court's findings of fact unless they are clearly erroneous. A factual finding is clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " This court, however, may exercise *de novo* review over the bankruptcy court's conclusions of law.

*Id.* at 1043 (citations omitted). *See also First Bank v. Mullet (In re Mullet)*, 817 F.2d 677, 679 (10th Cir.1987) ("both the court of appeals and the district court are to review the bankruptcy court's legal determinations *de novo* "); *cf. Jarboe v. Unit-*

*ed Bank (In re Golf Course Builders Leasing, Inc.),* 768 F.2d 1167, 1169 (10th Cir.1985) ("the 'clearly erroneous' standard does not apply to ... mixed questions of law and fact").

Chapter 13 of the Bankruptcy Code of 1978, 11 U.S.C. §§ 1301–30 (1988)

provides for the adjustments of the debts of an individual with regular income, through extensions and composition plans, usually extending no more than three years, § 1322(c) of the Code, funded out of the Chapter 13 petitioner's future income (which is submitted to the court for the payment of the debts as provided for by the plan, § 1322(a) of the Code). The adjustments and extensions so allowed, however, are subject to provisions that protect the interests of creditors, including, inter alia, their secured interests.

*Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236, 237 (5th Cir.1984) (en banc).

Two sections of the Code are particularly important in this case. The first is 11 U.S.C. § 1322(b)(2). Section 1322 sets forth the required contents of a chapter 13 debtor's plan for rehabilitation. Subsection (b)(2) provides that the plan may: "modify the rights of holders of secured claims ... or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

The original draft of the Code, prepared by the Commission on the Bankruptcy Laws of the United States, recommended permitting modification of secured indebtedness on personal property. *Grubbs,* 730 F.2d at 243–44; *In re Neal,* 10 B.R. 535, 538 (Bankr.S.D. Ohio 1981); *see also* H.R. Rep. No. 595, 95th Cong., 1st Sess., *reprinted in* 1978 U.S.Code Cong. & Admin. News 5963; S.Rep. No. 989, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787. The House version of the Code, H.R. 8200, 95th Cong., 1st Sess. (1977), expanded this capability for modification of secured interests to include both real and personal property. *Grubbs,* 730 F.2d at 243; *In re Neal,* 10 B.R. at 538–39. The Senate version, S. 2266, 95th Cong., 2d Sess. (1978), restricted the House version's broad right to modification by adding the underlined phrase of the following passage,

"(2) modify the rights of holders of secured claims <u>(other than claims wholly secured by mortgages on real property)</u> or of holders of unsecured claims." *Grubbs,* 730 F.2d at 245 & n. 14; *In re Neal,* 10 B.R. at 539. The final version of the Code reflected the efforts of a compromise committee. "There was no explanation as to the rationale for the change of the word 'wholly' to the word 'only.'" *Id.* The change in the order of the words in the clause also remains unexplained.

In *Grubbs,* the Fifth Circuit found that Congress intended to protect the home mortgage industry:

With regard to § 1322(b)(2), the Senate receded from its position that no "modification" was to be permitted of *any* mortgage secured by real estate; it instead agreed to a provision that modification was to be barred *only* as to a claim "secured only by a security interest in real property *that is the debtor's principal residence.*" This limited bar was apparently in response to perceptions, or to suggestions advanced in the legislative hearings [by advocates for secured creditors], that, home-mortgagor [sic] lenders, performing a valuable social service through their loans, needed special protection against modification thereof (*i.e.,* reducing installment payments, secured valuations, etc.).

730 F.2d at 246 (emphasis in original); *see also id.* at 245 n. 13; *Federal Land Bank v. Glenn (In re Glenn),* 760 F.2d 1428, 1433–34 (6th Cir.), *cert. denied sub nom Miller v. First Fed.,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *In re Seidel,* 752 F.2d 1382, 1385–86 (9th Cir.1985); *In re Harris,* 94 B.R. 832, 836 (D.N.J.1989); *In re Foster,* 61 B.R. 492, 495 (Bankr.N.D. Ind.1986) (special protection of § 1322(b)(2) was created as narrow exception to broad restructuring power under chapter 13; exception sought to decrease lender's risk in residential real estate loans); *In re Neal,* 10 B.R. at 536–37. At least one court has concluded that the benefit of section 1322(b)(2) was intended to apply only to lending institutions dealing solely in real estate loans, such as banks and savings and loan associations, as opposed to finance

companies who regularly take other forms of security, such as motor vehicles and household furnishings. *United Companies Fin. Corp. v. Brantley*, 6 B.R. 178, 189 (Bankr.N.D.Fla.1980); *cf. In re Glenn*, 760 F.2d at 1434 (application of section 1322(b)(2) often arises in the context of consumer debts for personal property secured by the debtor's home or in the context of financing for business ventures secured by the debtor's home).

The other section of the Code bearing on this case is 11 U.S.C. § 506(a):

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property.

"Section 506 ... governs the definition and treatment of secured claims.... Subsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238–39, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989); *see also Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir.1990) (citing *Ron Pair Enters.*) (11 U.S.C. §§ 506(a) and (d) govern the definition and treatment of secured claims); H.R.Rep. No. 595, 95th Cong., 1st Sess. 356, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6312–13.

 The dispositive issue in this case is whether Eastland's undersecured loan may be bifurcated into two *claims* by applying the general principles of section 506(a) to the mortgage and then protecting only the secured claim by the provisions of section 1322(b)(2). We believe it can.

Eastland claims that this court does not have jurisdiction to examine this issue. Eastland notes that the bankruptcy court did not reach this issue because it found that rents, royalties, profits and stock were "collateral other than the debtor's principal residence, and thus the claim was not protected by section 1322(b)(2)," bankruptcy court order at 5–6, and that the Harts did not "cross-appeal" the issue in the district court. The Harts counter that they noted the issue in their "appellee's statement" to the district court and that such notice is sufficient to confer district court jurisdiction over the issue, pursuant to Fed.R. Bankr.P. 8010(a)(2).[1]

We hold that we do have jurisdiction to rule on this issue for two reasons. First, in this circuit, "[a]n appellee may defend the judgment won below on any ground supported by the record without filing a cross appeal." *Robinson v. Robinson (In re Robinson)*, 921 F.2d 252, 253 (10th Cir. 1990) (citing *Koch v. City of Hutchinson*, 847 F.2d 1436, 1441 n. 14 (10th Cir.) (en banc), *cert. denied*, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988)).

And second, although the record on appeal does not include the Harts' appellee's statement, they evidently did bring the issue to the district court's attention because the district court order states: "Debtors contend that even if Eastland's claim is within the scope of 1322(b)(2), debtors can still bifurcate the claim into secured and unsecured claims and modify the unsecured portion pursuant to 11 U.S.C. § 506(a)." District court order at 3.

The district court did not consider this issue, on the grounds that "the issue is not before this Court on appeal." *Id.* at 4. However, the district court could have ad-

---

1. Fed.R.Bankr.P. 8010(a)(2) provides:
 Brief of the Appellee. The brief of the appellee shall conform to the requirements of paragraph (1)(A)–(E) of this subdivision [contents of the appellant's brief: table of contents, basis of appellate jurisdiction, issues presented and standard of review, statement of the case (includes nature of the case, course of proceedings, disposition in the court below, facts relevant to the issues on review with record references), and argument], except that a statement of the basis of appellate jurisdiction, of the issues, or of the case need not be made unless the appellee is dissatisfied with the statement of the appellant.

dressed the issue had it concluded that it was dispositive. *See Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.),* 761 F.2d 1374, 1377 (9th Cir.1985) (district court has the discretion to consider any issue presented by the lower court record, even if not addressed in the bankruptcy court). As also noted above, this court has the same scope of review over bankruptcy court decisions as does the district court. Thus, the issue of threshold bifurcation of the Harts' mortgage prior to application of section 1322(b)(2) protection from modification is properly before us.

Threshold bifurcation of undersecured mortgages has been recognized recently by both the Third and the Ninth Circuits. In *Hougland v. Lomas & Nettleton Co. (In re Hougland),* 886 F.2d 1182 (9th Cir.1989), the Ninth Circuit held that:

> [I]t is clear that section 506(a) applies to Chapter 13 proceedings. *See* § 103(a). There is, therefore, no reason to believe that the phrases "secured claim" and "unsecured claim" in section 1322(b)(2) have any meaning other than those given to them by section 506(a).
>
> . . . .
>
> Congress quite plainly has provided for the separation of undersecured claims into two components—a secured component and an unsecured component. It has then provided for their treatment in Chapter 13 proceedings. The secured portion has special protection when residential real estate lending is involved. The unsecured portion does not.

*Id.* at 1183, 1185.[2] *Accord Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 127, 128 (3d Cir.1990) ("[W]e hold today that section 1322(b)(2) does not preclude the modification of any 'unsecured' portion of an undersecured [mortgage debt]."); *Gaglia v. First Fed. Savs. & Loan Ass'n,* 889 F.2d 1304, 1311 (3d Cir.1989) ("Whether the plan complies with § 1322(b)(2) depends on the extent to which the claim is secured, an issue that is determined by reference to § 506."); *In re Lewis,* 875 F.2d 53, 56 (3d Cir.1989) (in a chapter 13

proceeding, a claim secured only by a security interest in the debtor's residence may be voided to the extent it is not an allowed secured claim as defined by section 506). *See also* 5 *Collier on Bankruptcy* ¶ 1322.06[1][a] at 1322–15 (L. King, 15th ed. 1979 & Supp. Dec. 1989).

While no other circuit courts have ruled on this issue, district courts and bankruptcy courts from other circuits reflect a split of authority. Courts within the Fourth, Sixth, and Seventh Circuits have favored protection of only the secured portion of a home mortgage under section 1322(b)(2), applying section 506(a) and then submitting only the secured portion of the claim to the protection of section 1322(b)(2). *See McNair v. Chrysler First Fin. Servs. Corp. (In re McNair),* 115 B.R. 520, 523 (Bankr.E.D.Va.1990); *In re Demoff,* 109 B.R. 902, 915 (Bankr.N.D.Ind.1989); *In re Hill,* 96 B.R. 809, 813–14 (Bankr.S.D. Ohio 1989); *In re Frost,* 96 B.R. 804, 807 (Bankr. S.D. Ohio 1989).

To the contrary, bankruptcy courts in the Fifth, Eighth, and Eleventh Circuits have held that such bifurcation is inappropriate. The bankruptcy courts in these circuits rely on some or all of four rationales: (1) the legislative history mandates protection of the home mortgage lender, and bifurcation impermissibly dilutes that protection; (2) as a matter of statutory construction, the requirements of a specific section, in this case section 1322(b)(2), control those of a general section, in this case section 506(a); (3) as a matter of statutory construction, the courts should look to the definition of "claim" from section 101(4), which includes both secured and unsecured claims, rather than the definition of "secured claim" from section 506(a); and (4) analysis of the legislative history should look back to Chapter XIII of the now-repealed Bankruptcy Act, predecessor to the Code, for guidance in the definition of secured claims. *See In re Chavez,* 117 B.R. 733, 736–37 (Bankr.S.D. Fla.1990); *In re Sauber,* 115 B.R. 197, 199 (Bankr.D.Minn.1990); *In re Schum,* 112

---

**2.** *In re Hougland,* cites 11 U.S.C. 103(a) as authority for the proposition that section 506(a) applies to section 1322(b)(2). Section 103(a) provides: "Except as provided in section 1161 of this title [Railroad Reorganization], chapters 1, 3, and 5 [which includes section 506(a) ] of this title apply in a case under chapter 7, 11, 12, or 13 of this title."

B.R. 159, 162 & n. 3 (Bankr.N.D.Tex.1990); *In re Kaczmarczyk,* 107 B.R. 200, 202–03 (Bankr.D.Neb.1989); *In re Russell,* 93 B.R. 703, 705 (D.N.D.1988); *In re Catlin,* 81 B.R. 522, 524 (Bankr.D.Minn.1987).[3] We are not persuaded that application of any of these four rationales, taken individually or cumulatively, results in a correct reading of the Code as currently enacted.

The position of the Third and Ninth Circuits and the other courts which have adopted threshold bifurcation under section 506(a) prior to submission of the secured claim portion of a mortgage to the protection of section 1322(b)(2) reflects the plain meaning of section 1322(b)(2), which states:

> Subject to subsections (a) and (c) of this section, the plan may—
>
> ....
>
> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

In interpreting any statute, we " 'begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.' " *Justice v. Valley Nat'l Bank,* 849 F.2d 1078, 1084 (8th Cir.1988) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985)). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' " *Ron Pair Enters.,* 489 U.S. at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). In addition, using a literal reading of 11 U.S.C. § 1322(b)(2) is less speculative and less quasi-legislative than attempting to ferret its meaning from its legislative history, which, as we have seen, is not clear enough with respect to this issue to show a "demonstrably" different congressional intent than that indicated by the plain meaning of the statute itself.

■ We join the Third and Ninth Circuits in holding that an undersecured mortgage is, for the purposes of the bankruptcy code, two *claims,* and only the secured *claim* is protected by section 1322(b)(2).[4] More importantly, we recognize that while bifurcation, in the literal sense, may be a modification of the *mortgage* represented in the secured and unsecured claims, bifurcation is not, of itself, a "modification" of the secured claim made impermissible by section 1322(b)(2). Indeed, the act of bifurcation recognizes, but does not affect, the secured claim.

We find nothing in the plain language of section 1322(b)(2) which instructs us to go beyond the Code's statutory definition of the term "secured claims" to protect the unsecured portion of an undersecured home mortgage. We note that the Harts' plan provided for the secured claim to be paid in full without adjustment in the interest rate or repayment schedule stated in the loan documents. Under this plan, payment of only the secured portion of the debt is not a modification of the creditor's rights under the mortgage, and thus is allowed under 11 U.S.C. § 1322(b)(2).

Tangentially, the Harts argue that their mortgage is secured by more than "only an interest in real property that is [their] principal residence," thereby removing the mortgage from the protection of section 1322(b)(2) and freeing them to subject it to section 506(a) bifurcation. Both the bankruptcy court and the district court confined their analysis to this approach in analyzing the bifurcation issue. The bankruptcy court concluded that:

---

**3.** The courts in our own circuit are split on the issue. *Compare Brouse v. CSB Mortgage Corp. (In re Brouse),* 110 B.R. 539, 543–44 (Bankr.D. Colo.1990); *In re Ross,* 107 B.R. 759, 762 (Bankr.W.D.Okla.1989); *In re Simmons,* 78 B.R. 300, 303 (Bankr.D.Kan.1987) *with First Interstate Bank v. Woodall (In re Woodall),* 123 B.R.

95 (W.D.Okla.1990); *In re Christiansen,* 121 B.R. 63 (Bankr.D.Colo.1990).

**4.** The term "secured claims" as used in that section is defined by section 506(a), which requires bifurcation.

While such items as "rents, royalties ... profits ... and stock" may be related to realty, clearly they are not realty and certainly are not considered a part of a mortgagor's principal residence. Although Eastland argues none of those items are present in this case at this time, the drafters of the mortgage form certainly placed the mortgagee in a position to claim such items as its collateral if they arise in the future. Thus, Eastland cannot now be heard to say its claim is limited to only Debtors' principal residence.

Bankruptcy court order at 5. Through this analysis, the bankruptcy court removed the mortgage from the protection of section 1322(b)(2) and allowed application of the bifurcation provisions of section 506(a).

The district court reversed. It stated that, "Eastland does not seriously contend that rents and profits are real property. Therefore ... the language of the clause covers items other than real property." District court order at 2. However, the district court concluded that Eastland's mortgage was totally protected by section 1322(b)(2) because the non-realty items did not presently exist and therefore could not be construed as security for the mortgage, citing the definition of a secured claim found in 11 U.S.C. § 506 and *In re Foster,* 61 B.R. at 495 (additional security must have actual independent value; land bank stock's value is illusory). District court order at 2–3. The district court concluded that because a mortgage does not exist on items which do not exist, nothing other than the Harts' real property secured the loan, and Eastland's mortgage was totally protected by section 1322(b)(2).

■ The Harts argue that, in finding that the additional items of collateral had no value, the district court made a finding of fact unsupported by the record. They argue, citing Fed.R.Bankr.P. 8013,[5] that the district court had no jurisdiction to make such findings of fact. We agree.

The Third Circuit clarified the federal appeals court's role in reviewing district court decisions in bankruptcy cases:

> As an appellate court twice removed from the primary tribunal, we review both the factual and the legal determinations of the district court for error. The district court does not sit as a finder of facts in evaluating them as a court of review, and therefore its evaluation of the evidence is not shielded by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a), which applies only to a *trial* court sitting as a fact finder. We are in as good a position as the district court to review the findings of the bankruptcy court, so we review the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review. To the extent the parties challenge the choice, interpretation, or application of legal precepts, we always employ the fullest scope of review: we examine the decision of the court from which the appeal is taken for error, and the legal determinations of the district court as a reviewing tribunal are not shielded by any presumption of correctness.

*Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101–02 (3d Cir.1981) (emphasis in original).

While the district court "is free to draw inferences from undisputed facts," *Adams v. United States (In re Breit),* 460 F.Supp. 873, 875 (E.D.Va.1978), it "may not accept the findings of the bankruptcy court and then go on to make additional findings having the effect of contradicting the conclusions of the bankruptcy court." *In re Neis,* 723 F.2d 584, 589 (7th Cir.1983). "Merely because a reviewing Court on the same evidence may have reached a different result will not justify setting a finding aside." *Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.),* 622 F.2d 709, 723 (5th Cir.1980) (citing *United States v. Na-*

---

5. Fed.R.Bankr.P. 8013 provides:

> On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

*tional Ass'n of Real Estate [Bds.],* 339 U.S. 485, 495–96, 70 S.Ct. 711, 717, 94 L.Ed. 1007 (1950)).

In this case, the district court went beyond the factual findings of the bankruptcy court to find that the rents and profits listed as security on the Harts' mortgage are illusory,[6] apparently based on undocumented, albeit uncontested, statements in Eastland's brief to the district court. The district court then went on to use this finding of fact to reverse the legal conclusion of the bankruptcy court. This use of a finding of fact by the district court in a bankruptcy appeal, unsupported by the record, is reversible error.

The order of the District Court for the Western District of Oklahoma is REVERSED and this matter is REMANDED to the Bankruptcy Court for the Western District of Oklahoma for further proceedings consistent with this opinion.

BRORBY, Circuit Judge, dissenting.

As I would affirm the decision of the district court, I must dissent.

The principal issue we must decide is the apparent tension between two separate provisions of the Bankruptcy Code. 11 U.S.C. § 506(a) provides that a claim is secured only to the extent of the value of the property on which the lien is fixed. The balance of the debt is unsecured. On the other hand, 11 U.S.C. § 1322(b)(2) provides that a plan may modify the rights of holders of secured claims "other than a claim secured only by a security interest in real property that is the debtor's principal residence...." *Id.*

The majority's conclusion is that § 1322(b)(2) applies only after the secured debt has been reduced to the fair market value of the property. In other words, § 1322(b)(2) "kicks in" only to prevent any further modification of this secured claim. The problem with this approach is that it

renders § 1322(b)(2) essentially meaningless.

The majority accurately describes the split in authority on this issue and cites numerous bankruptcy court decisions in the Fifth, Eighth and Eleventh Circuits that have disagreed with the majority's approach. I am persuaded by these decisions. I believe these cases correctly analyze the problem and reach the better solution.

---

6. It is undisputed that illusory items may not serve as security for a mortgage, as that term is used in section 1322(b)(2). *See, e.g., Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 129 (3d Cir.1990) (items must have independent value to serve as collateral for a mortgage); *In re Foster,* 61 B.R. at 495 (security interest must have "actual independent value"); *cf. In re Stiles,* 74 B.R. 708, 710 (Bankr.N.D.Ala.1987) (worthless collateral does not defeat section 1322(b)(2) protection).