In re Joann SAINZ–DEAN, Debtor.

**UNION PLANTERS NATIONAL BANK, Appellant,**

v.

**Joann SAINZ–DEAN, Appellee.**

Civ. A. No. 92–K–559.

Bankruptcy No. 91–12972 DEC.

United States District Court,
D. Colorado.

Aug. 7, 1992.

Aurdris G. Hampton, Burke & Castle, Denver, Colo., for Union Planters.

James A. Kaplan, Machol, Davis & Michael, Denver, Colo., for Sainz–Dean.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

Recently, the United States Supreme Court held that the phrase allowed "se-

cured claim" in 11 U.S.C. § 506(a)[1] has a very different meaning when used three paragraphs later in 11 U.S.C. § 506(d).[2] The appellants now ask me to extend the Court's lapinary logic to the facts in this case, thus forcing me to consider anew Humpty Dumpty's advice on the construction of language.[3] I decline to contribute to further obfuscation in an already muddled area and thus affirm the judgment of the bankruptcy court. In so doing, I rule that a debtor in a chapter 13 proceeding may use 11 U.S.C. § 506(a) to strip a creditor's lien down to the present value of the property without doing statutory violence to 11 U.S.C. 1322(b)(2).

## I. Facts and Procedural History

Joan Sainz–Dean ("debtor") filed a chapter 13 petition with a proposed plan on March 8, 1991. She amended the plan on September 11, 1991. Union Planters National Bank ("creditor") objected to the plan. In 1987, it's predecessor had loaned the debtor $88,904, secured by a deed of trust upon the debtor's primary residence. An F.H.A. insurance program protected the FNMA loan. In the bankruptcy court, the parties agreed that the value of the property had slipped to about $50,000. The debtor's amended plan proposed to bifurcate the creditor's claim, treating $50,000 as a secured claim and about $37,500 as an unsecured claim. The debtor planned to continue to make regular mortgage payments against the secured portion and to pay $3,143. (about 8%) of the unsecured portion. In bankruptcy parlance, this is known as a cramdown. The metaphor is indeed graphic even if gauche.

In the bankruptcy court, the debtor relied upon a recent circuit opinion expressly allowing such a bifurcation and cramdown in a chapter 13 proceeding. *In re Hart*, 923 F.2d 1410 (10th Cir.1991). The bankruptcy court permitted the cramdown on the strength of *Hart*, but thought that a recent Supreme Court decision had probably overruled *Hart*. *Dewsnup v. Timm*, — U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In *Dewsnup*, the Court affirmed a tenth circuit decision which held that a chapter 7 debtor could not strip down a creditor's lien on real property to a lesser judicially determined value of the collateral. The court held that § 506(d) "does not allow [a debtor] to 'strip down' [a creditor's] lien, because [the creditor's] claim is secured by a lien and has been fully allowed pursuant to § 502." — U.S. at ——, 112 S.Ct. at 778. The court determined, *inter alia*, that liens on real property historically passed through bankruptcy unaffected.

Thus, to avoid effecting "a major change in pre-Code practice that [was] not the subject of at least some discussion in the legislative history," the court held that the words " 'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a).... Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured." — U.S. at ——, 112 S.Ct. at 778. In the Supreme Court's view, it was permissible to define "secured claim" in 11 U.S.C. § 506(d) to have a different meaning that "secured claim" in § 506(a), thus allowing it to refuse the cramdown in a chapter 7 proceeding.

1. 11 U.S.C. § 506(a) provides: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." The Court's opinion is *Dewsnup v. Timm*, — U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

2. 11 U.S.C. § 506(d) provides: "To the extent that a lien secures a claim against the debtor

that is not an allowed secured claim, such lien is void...."

3. "When I use a word," Humpty Dumpty said, in a rather scornful tone, "it means just what I choose it to mean—neither more nor less." "The question is," said Alice, "whether you can make words mean so many different things." "The question is," said Humpty Dumpty, "which is to be master—that's all." L. Carroll, Through the Looking Glass 198 (Messner ed. 1982). Cf. *Shapiro v. United States*, 335 U.S. 1, 42 n. 5, 68 S.Ct. 1375, 1397 n. 5, 92 L.Ed. 1787 (1948).

The bankruptcy court expressed concern that *Dewsnup* had implicitly overruled *Hart*, but thought itself bound nonetheless by *Hart.* 139 B.R. 739. It accordingly allowed the cramdown over the creditor's objections. This appeal followed. I have jurisdiction pursuant to 28 U.S.C. 158(a). No issues of fact are disputed in this appeal. I thus review the bankruptcy court's legal conclusions on a de novo basis.

For the reasons discussed below, I conclude that *Hart* remains good law even in the face of the *Dewsnup* decision, and thus affirm the bankruptcy court's decision.

## II. Discussion

In *Hart*, the circuit determined that a home mortgage in a chapter 13 proceeding could be bifurcated into secured and unsecured portions without "modifying" the mortgage within the meaning of 11 U.S.C. § 1322(b)(2). It held that "the bifurcation was a recognition of the legal status of the creditor's interest in the debtors' property and not a modification of the mortgage." 923 F.2d 1410.

The circuit reached its conclusion by reconciling the two pertinent provisions of the bankruptcy code, 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2). § 506(a) provides that a claim is secured *only to the extent of the value* of the property on which the lien is fixed. (emphasis added.) § 1322(b)(2) provides that a plan may modify the rights of holders of secured claims "other than a claim secured only by a security interest in real property that is the debtor's principal residence...." The circuit reconciled these provisions by determining that § 1322(b)(2) applies only after § 506(a) has reduced the secured debt to the fair market value of the property. That is, § 1322(b)(2) " 'kicks in' only to prevent any further modification of this secured claim." *Hart*, 923 F.2d at 1417 (Brorby, J. dissenting). In this appeal the creditor suggests that I should ignore *Hart* for a number of reasons. Primarily, it asserts that *Dewsnup* implicitly overrules *Hart*. Secondarily, it

claims that a cramdown of its federally insured loan is contrary to public policy. I disagree with both arguments.

### A. The Import of Dewsnup

■ The second circuit recently considered whether a secured creditor's claim could be stripped down in a Chapter 13 proceeding without violating 11 U.S.C. § 1322(b)(2). It answered in the affirmative. It held that the rights "which may not be modified under § 1322(b)(2) must be defined in terms of the claim, not with reference to the status of the claimant." *In re Bellamy*, 962 F.2d 176, 180 (2d Cir. 1992). It understood that treatment "under the Code turns on whether a *claim* is secured or unsecured, not on whether a *creditor* is secured or unsecured." 962 F.2d at 179. Thus, "bifurcating [the secured creditor's] claim into unsecured and secured portions does not, for purposes of § 1322(b)(2), modify its 'rights,' but rather simply determines how, under the Code, its right to payment must be satisfied." 962 F.2d at 180. The second circuit thus joined the other circuits that had considered the issue. *See In re Hart*, 923 F.2d 1410 (10th Cir.1991) *(per curiam); Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d Cir.1990); and *In re Hougland*, 886 F.2d 1182 (9th Cir.1989).

■ Since the second circuit announced its decision after the Supreme Court's decision in *Dewsnup*, it perforce had to consider the opinion's impact. It rejected the creditor's claim that if "secured claim" in § 506(d) does not have the same meaning as it does in § 506(a), then the term does not have the same meaning in § 1322(b)(2) as it does in § 506(a). It found, as I do, that the Court specifically and explicitly limited its analysis to § 506(d) and to the facts before it. *See Dewsnup*, — U.S. at ——, 112 S.Ct. at 778.[4] The second circuit also noted that since certain Code provisions "explicitly state that the term 'secured claim' is *not* to be defined as in

---

4. "Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible

fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day." — U.S. at ——, 112 S.Ct. at 778.

§ 506(a), it is reasonable to assume 'secured claim' has the meaning assigned to it in § 506(a), unless to read it in that fashion would be 'contrary to basic bankruptcy principles.'" 962 F.2d at 182, *quoting Dewsnup*, —— U.S. at ——, 112 S.Ct. at 779. In fact, the second circuit specifically concluded as a matter of interpretation, practice and pre-Code history, that "secured claim" should have the same meaning in § 506(a) and § 1322(b)(2). 962 F.2d at 182–84.

I agree with the second circuit's reasoning and adopt it. Furthermore, I note that the third circuit has recently considered the impact of *Dewsnup* on its earlier decision, *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d Cir.1990), which allowed the stripdown of secured claims in a chapter 13 proceeding. *Sapos v. Provident Institution of Savings*, 967 F.2d 918 (3d Cir.1992). In *Sapos*, the third circuit, too, rejected the notion that *Dewsnup* limits the ability of a chapter 13 debtor to strip down a creditor's secured lien. 967 F.2d at 924–25. 1992 WL 143504 at 6.

### B. Unconstitutional Taking

■ The creditor also argues that such an interpretation of § 1322(b)(2) and § 506(a) amounts to an unconstitutional taking under the fifth amendment, thus violating 11 U.S.C. § 1325(a)(3), which forbids confirmation of a plan if "proposed ... by any means forbidden by law." By virtue of the cramdown, it asserts, it is unable to recover any insurance proceeds from the F.H.A. insurance program, to which it would otherwise be entitled had the debtor merely defaulted on the mortgage. This is so, the creditor explains, because the cramdown is not considered a default under the applicable federal regulations. Although it is not for me to interpret those regulations, I nonetheless disagree with the creditor's underlying premise.

11 U.S.C. § 506(a) only protects a creditor's claim to the extent of the value of the collateral. The value of the collateral, however, does not include any rights which the creditor may have in its FHA insurance, since the value of the creditor's interest is limited to the value of the collateral. *Unit-ed Savings Association v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 372, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988). Hence, because the value of the collateral does not include any benefits from the F.H.A. insurance program, the cramdown of the secured interest is not a taking. *And see, In re Fischer*, 136 B.R. 819, 828 (D.Alaska 1992); *In re Taras*, 136 B.R. 941 (Bankr.E.D.Pa.1992); *In re Lopez*, 75 B.R. 961 (Bankr.E.D.Pa.1987), *affirmed*, 82 B.R. 712 (E.D.Pa.1988).

### C. Policy Considerations

■ The creditor finally argues that permitting a cramdown by a chapter 13 debtor in these circumstances will be contrary to public policy and contrary to a fair reading of the National Housing Act, 12 U.S.C. § 1701 et seq. The purpose of the NHA is to make housing available to low and moderate income families by inducing lenders to make home loans they would otherwise not make. "To interpret the Bankruptcy Code in a way that removes this inducement will nullify the National Housing Act because lenders will not be willing to participate without the protection of the Federal insurance." *Appellant's Opening Brief* 16. Although I disagree with this reasoning as a matter of fact, I am compelled to agree with the second circuit's disposition of the same issue.

> Nothing in the record supports that declaration [that allowing cramdowns will shrink available home mortgage funds], and, even if there were some proof of it, the balance to be struck between promoting home ownership and protecting residential mortgage lenders is one for the legislature, not the courts, to make.

*Bellamy*, 962 F.2d at 186; *accord, In re Hougland*, 886 F.2d 1182 (9th Cir.1989); *In re Demoff*, 109 B.R. 902 (Bankr.N.D.Ind. 1989).

The judgment of the bankruptcy court is accordingly affirmed.