NORMAN WALTER AND BETTY LEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ley v. Commissioner
Docket No. 19160-90
United States Tax Court
T.C. Memo 1993-306; 1993 Tax Ct. Memo LEXIS 309; 66 T.C.M. (CCH) 113; July 14, 1993, Filed *309 Decision will be entered for respondent. Norman Walter Ley, pro se. For respondent: Nancy Graml. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined a deficiency of $ 14,444.56 in petitioners' 1981 Federal income tax. The sole issue for decision is whether petitioners properly deducted $ 34,437.75 from their 1981 gross income, Norman W. Ley's (petitioner) ratable portion of a pass through net operating loss sustained by L & T Exploration Inc. (L & T Exploration), a small business corporation (S corporation) in which he was a shareholder. We hold that petitioners were entitled to deduct $ 525 of such loss. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. Petitioners resided in Houston, Texas, when they filed their petition in this case. On February 22, 1980, L & T Exploration was incorporated under the laws of Louisiana to carry on the business of prospecting for oil and gas. On that date, petitioner acquired 75 shares of L & T Exploration stock for $ 75, and Tommy F. Thomas (Mr. Thomas), a business associate of petitioner, acquired the remaining 25 shares of L & T Exploration stock. L & T Exploration elected *310 S corporation status on March 17, 1980. On May 1, 1981, petitioner acquired an additional 525 shares of L & T Exploration stock for $ 525. On that date, an additional 375 shares of L & T Exploration stock were acquired by Mr. Thomas (225 shares), James W. Denny III (100 shares), Russell E. Thomas (25 shares), and James A. Thomas (25 shares). During 1981, the business operations of L & T Exploration were financed primarily through three revolving short-term loans totaling $ 492,500 from the Guaranty Bank of Lafayette, Louisiana (Guaranty Bank). Each loan was evidenced by at least one promissory note. [1] *311 "L & T Exploration, Inc." or "L & T Exp., Inc" is typed or printed on the face of each promissory note. With the exception of the promissory note dated March 30, 1981, the maker of each of the notes is unambiguously identified as L & T Exploration. [2] Although petitioner and Mr. Thomas signed each promissory note twice, once on the face of the note and once on the back of the note as personal indorser or guarantor, the notes do not indicate that petitioner and Mr. Thomas signed as representatives of L & T Exploration. The proceeds of the Guaranty Bank loans were disbursed directly to L & T Exploration. In 1981, all payments of interest and principal to Guaranty Bank were made by L & T Exploration. Neither petitioner, Mr. Thomas, nor L & T Exploration pledged any collateral or gave any other security interest to Guaranty Bank on these loans. However, at the request of Guaranty Bank, L & T Exploration purchased $ 250,000 life insurance policies on the lives of petitioner and Mr. Thomas and paid the premiums on these policies. In 1986, at the request of Guaranty Bank, the life insurance policies were cashed in and the proceeds were assigned to Guaranty Bank as payment on the three revolving loans. In 1986, petitioner also assigned his interest in two parcels of real estate to Guaranty Bank. L & T Exploration terminated its corporate existence in 1988. L & T Exploration reported, *312 on its 1981 income tax return, total income of $ 394,010, total deductions of $ 464,725, and a net operating loss of $ 70,715. L & T Exploration reported, on Schedule L of its 1981 Form 1120S, liabilities of $ 407,500 for mortgages, notes, and bonds payable in less than one year and no more than $ 1,000 for capital stock, of which petitioner's share was $ 600. L & T Exploration also reported a 1981 interest expense deduction of $ 26,975. L & T Exploration did not report any loans from shareholders on its Schedule L or on the Schedule K-1 for petitioner or any other shareholder. Nor is there any documentation in the record evidencing any additional capital contributions or subsequent loans to L & T Exploration by petitioner or any of its other shareholders. Petitioners reported, on their 1981 Federal income tax return, a deduction of $ 34,437.75 attributable to petitioner's ratable portion of L & T Exploration's pass through net operating loss. On Schedule C of their income tax return, petitioners reported an interest deduction of $ 8,704.84 for their home mortgage and a loan of undisclosed origin and business expense deductions of $ 137,607.81, approximately $ 44,000 of which *313 petitioner attributed to expenses he had incurred and paid on behalf of L & T Exploration. Petitioners did not report any dividend or interest income from L & T Exploration. Respondent determined that petitioner's 1981 adjusted basis in L & T Exploration stock was $ 525. OPINION Section 1372(b)(1)[3] provides that an S corporation is not generally subject to Federal income tax. Rather, the shareholders of an S corporation must include in their gross income the amount they would have received as a dividend if the corporation had made a pro rata distribution of its undistributed taxable income on the last day of the year. Sec. 1373(a) and (b). Similarly, an S corporation's shareholders generally may deduct from their gross income an amount equal to their respective portions of any net operating loss sustained by the corporation. Sec. 1374(a) and (b). However, the extent to which an individual shareholder, such as petitioner, may deduct his portion of the S corporation's net operating loss is limited to the sum of his adjusted basis in the corporation's stock and his adjusted basis in any corporate debt to him. Sec. 1374(c)(2). *314 Respondent contends that petitioners may not deduct losses attributable to L & T Exploration in excess of petitioner's adjusted stock basis of $ 525. [4] Petitioners, however, contend that petitioner's adjusted stock and debt basis in L & T Exploration exceeded $ 34,437.75, petitioner's ratable portion of L & T Exploration's pass through net operating loss for 1981. Petitioners argue that petitioner's adjusted stock and debt basis in L & T Exploration included one-half of the Guaranty Bank loan amounts, which he was obligated to repay. Petitioners argue that the Guaranty Bank loans were personal loans, or should be treated as personal loans, made to petitioner and Mr. Thomas, and that they invested the proceeds in L & T Exploration. Petitioners therefore argue that the Guaranty Bank loans were contributions of petitioner and Mr. Thomas to L & T Exploration sufficient to increase petitioner's stock and debt basis in the corporation. *315 Whether the Guaranty Bank loans were made to L & T Exploration or to petitioner and Mr. Thomas is a question of fact that must be determined after reviewing the entire record. In Re Breit, 460 F.Supp. 873, 875 (E.D. Va. 1978). Respondent's determination is presumptively correct, and petitioners have the burden of proving it erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure; Calcutt v. Commissioner, 84 T.C. 716, 719 (1985). For the reasons that follow, we hold that petitioners have not met their burden. Petitioners' argument, that the Guaranty Bank loans were personal loans made to petitioner and Mr. Thomas because they were personally obligated to repay the loans under Louisiana law, [5] is misplaced. While the existence of a personal obligation to repay the loans may be evidence that the loan is personal, it is clear that a shareholder may have a personal obligation on a loan made to the corporation. See Solar Supply, Inc. v. Camp's Heating & Air Conditioning, Inc., 408 So. 2d 968, 969 (La. App. 1981) (trial court correctly determined that the corporation and its *316 representative were liable, in solido, for corporation's debt); Associates Finance, Inc. v. Supreme Construction Co., 211 So. 2d 349 (La. App. 1968); see also Harris v. United States, 902 F.2d 439 (5th Cir. 1990); Estate of Leavitt v. Commissioner, 90 T.C. 206 (1988), affd. 875 F.2d 420 (4th Cir. 1989). The question therefore is not whether petitioner and Mr. Thomas were personally obligated to repay the loans, [6] but whether petitioner and Mr. Thomas were free to use the money as they wished. In Re Breit, supra at 877. *317 The record in this case is replete with evidence that the loans were solely for the corporation's use and that Guaranty Bank made the loans in reliance of that representation. Guaranty Bank disbursed the loan amounts directly to L & T Exploration, and all payments of interest and principal were made to Guaranty Bank by L & T Exploration. "L & T Exploration" or "L & T Exp., Inc." is typed or handwritten on the face of each promissory note. On 4 promissory notes, including the 3 notes that were still outstanding at the end of 1981, L & T Exploration was named as maker. Moreover, the Guaranty Bank loans are reported on L & T Exploration's 1981 income tax return, as part of its $ 407,500 liability for mortgages, notes, and bonds payable in less than one year. Conspicuously absent from that return and petitioners' 1981 income tax return is any indication of a loan transaction between petitioner and L & T Exploration. While the loan documentation and the income tax returns do not make direct references to the purpose of these loans, petitioners, on brief, state that "The bank * * * used the name of the * * * [corporation] in order to indicate the purpose for which the funds would *318 be used." Accordingly, the Guaranty Bank loans were corporate debt of L & T Exploration. Notwithstanding the above, petitioners contend that the Guaranty Bank loans should be treated as loans made to petitioner and Mr. Thomas, the proceeds of which they invested in L & T Exploration. Petitioners argue that Guaranty Bank always considered petitioner and Mr. Thomas as the primary obligers on the loans and it therefore is unlikely that Guaranty Bank would have made the loans to L & T Exploration without the guarantees or indorsements of petitioner and Mr. Thomas. Petitioners accordingly argue, citing Selfe v. United States, 778 F.2d 769 (11th Cir. 1985) and Plantation Patterns, Inc. v. Commissioner, 462 F.2d 712 (5th Cir. 1972), affg. T.C. Memo. 1970-182, that petitioner's obligation to repay the loans was a contribution to L & T Exploration sufficient to increase his stock and debt basis in the corporation. This Court and the Court of Appeals for the Fifth Circuit, the Court to which an appeal would lie in this case, have made it clear that the fact that shareholders may be primarily liable *319 on indebtedness of a corporation to a third party does not mean that this indebtedness is "indebtedness of the corporation to the shareholder" within the meaning of section 1374(c)(2)(B). No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation. * * * [Estate of Leavitt v. Commissioner, 90 T.C. 206, 211 (1988) (quoting Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968)), affd. 875 F.2d 420 (4th Cir. 1989); citations omitted.]
As we went on to say in Raynor v. Commissioner, supra at 771, Prior to that crucial act, "liability" may exist, but not debt to the shareholders.
See also Harris v. United States, 902 F.2d at 442-443; Underwood v. Commissioner, 535 F.2d 309, 311-312 (5th Cir. 1976), affg. 63 T.C. 468 (1975). In Estate of Leavitt v. Commissioner, supra at 217, *320 we declined to apply the debt-equity principles of Plantation Patterns, Inc. v. Commissioner, supra, a case of a subchapter C corporation, and relied on in Selfe v. United States, supra, to increase the shareholders' stock and debt basis in an S corporation where the shareholders had not paid any of the third party loans to the corporation that they guaranteed. Inasmuch as Congress intended to limit the applicability of section 1374(c)(2) to actual outlays, payments, or expenditures by the shareholder, S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 992, 1141, we concluded that increasing the shareholders' stock and debt basis without an economic outlay would provide a means by which they could "skirt the limitation embodied in section 1374(c) and thereby erect a tax shelter that Congress never intended to create", Estate of Leavitt v. Commissioner, supra at 217 (citing Brown v. Commissioner, 706 F.2d 755, 756 (6th Cir. 1983), affg. T.C. Memo. 1981-608); see Harris v. United States, supra at 443; *321 Underwood v. Commissioner, supra at 311-312. Through 1981, petitioner's economic outlay with respect to L & T Exploration amounted to no more than the price he paid for the L & T Exploration stock. [7] In 1981, L & T Exploration made all payments on the loans directly to Guaranty Bank. Petitioner made no economic outlay with respect to the Guaranty Bank loans before 1986, the year he assigned his interest in 2 parcels of real estate to Guaranty Bank. Even if petitioner was the original owner of the $ 250,000 life insurance policy on his life, and the record is not clear on this point, L & T Exploration paid the premiums, and the proceeds of the policy were not assigned to Guaranty Bank until 1986. Because the debt-equity principles of Plantation Patterns, Inc. v. Commissioner, supra, do not apply to S corporations in respect of which the shareholder has incurred no cost, petitioner has not shown that he is entitled to increase his L & T Exploration stock and debt basis prior to 1986. Cf. Harris v. United States, supra; Underwood v. Commissioner, supra; *322 Estate of Leavitt v. Commissioner, supra.
We accordingly sustain respondent's determination that petitioners' allowable deduction of L & T Exploration's pass through net operating loss for 1981 amounted to no more than $ 525, and that the excess deduction claimed by petitioners is disallowed. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. The record indicates that the following promissory notes were executed: ↩
Loan Number
Date Executed
Amount Borrowed
60213
March 30, 1981
$ 107,500.00
60213 (renewal note)
July 28, 1981
137,500.00
60213 (renewal note)
October 19, 1981
134,866.44
63063
June 4, 1981
75,000.00
71206
December 22, 1981
280,000.00
2. The Mar. 30, 1981, promissory note does not provide a space to record the maker of the loan. However, "L & T Exploration, Inc." is typed on the face of the promissory note directly above petitioner's and Mr. Thomas' signatures.↩
3. All section references are to the Internal Revenue Code in effect for 1981.↩
4. The parties have stipulated that petitioner paid $ 600 for his stock in L & T Exploration. However, respondent has reduced petitioner's stock basis in L & T Exploration by $ 75, the amount he paid for stock purchased in 1980, to reflect his allowable deduction for the 1980 pass through net operating loss sustained by L & T Exploration.↩
5. Under Louisiana commercial law an agent or authorized representative who signs his own name to a negotiable instrument is obligated on that instrument if the instrument names the person represented but does not show that the representative signed in a representative capacity. La. Rev. Stat. Ann. sec. 10:3-403(2)(b)↩ (West 1983).
6. Petitioners argue on brief, incorrectly in our view, that, under Louisiana law, petitioner and Mr. Thomas were the only obligors on the Guaranty Bank loans. Under Louisiana law, a corporation is generally liable on a negotiable instrument if its "signature" appears on the instrument and the mere fact that a representative of the corporation is personally liable on the instrument does not negate that liability. See generally Solar Supply, Inc. v. Camp's Heating & Air Conditioning, Inc., 408 So. 2d 968, 969 (La. App. 1981) (trial court correctly determined that the corporation and its representative were liable, in solido, for corporation's debt); Associates Finance, Inc. v. Supreme Construction Co., 211 So. 2d 349 (La. App. 1968); see also La. Rev. Stat. Ann. sec. 10:3-401(1) (West 1983). "A signature may be made by an agent or other representative". La. Rev. Stat. Ann. sec. 10:3-403(1) (West 1983). The "signature may be handwritten, typed, printed or made in any other manner" and it "may appear in the body of the instrument, as in the case of 'I, John Doe, promise to pay --' without any other signature." La. Rev. Stat. Ann. sec. 10:3-401 cmt. 2 (West 1983). In the case at hand, petitioner and Mr. Thomas caused "L & T Exploration" or "L & T Exp., Inc." to be typed or handwritten on the face of each promissory note. Petitioner and Mr. Thomas admittedly were authorized to sign the promissory notes for L & T Exploration. L & T Exploration's "signature" therefore appears on the face of each promissory note. Cf. Id. at sec. 10: 3-401(1). Petitioner's testimony that the words "L & T Exploration" or "L & T Exp., Inc." appeared on the promissory notes for Mr. Thomas' convenience, in order to distinguish the loans at issue from Mr. Thomas' other unrelated loans with Guaranty Bank, is not persuasive. If the corporate name was placed on the promissory notes solely for convenience, it is likely that the corporate name would have been typed or handwritten in a remote part of the promissory notes and not in the spaces provided for the promissory notes' maker. Similarly, we cannot assume that the second signatures of petitioner and Mr. Thomas on the back of the promissory notes were superfluous, which would be true if corporate liability was not intended. See Associates Finance, Inc. v. Supreme Construction Co., supra at 352. Accordingly, L & T Exploration was liable on the Guaranty Bank loans. See Solar Supply, Inc. v. Camp's Heating & Air Conditioning, Inc., supra; Associates Finance, Inc. v. Supreme Construction Co., supra↩.
7. Petitioner argued at trial that, in 1981, he incurred and personally paid approximately $ 44,000 of business expenses on behalf of L & T Exploration. Even if these expenses are capital contributions, as petitioner suggested, they would not lead to a reduction in the income tax deficiency determined by respondent, inasmuch as this treatment would result in a correlative disallowance of $ 44,000 of business expense deductions claimed and allowed on petitioners' 1981 income tax return.↩